**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:15-cv-23529-LENARD/GOODMAN**

ZOOLOGICAL WILDLIFE FOUNDATION,
INC., a Florida corporation, and MARIO
TABRAUE, an individual,

      Plaintiffs,

v.

THE HUMANE SOCIETY OF THE
UNITED STATES, INC.,

      Defendant.

_____/

**THE HUMANE SOCIETY OF THE UNITED STATES'**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

      Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Rule 7.1,

Defendant The Humane Society of the United States ("HSUS") respectfully submits this Motion

to Dismiss Plaintiffs' Complaint [D.E. 1-2] and Supporting Memorandum of Law.

**INTRODUCTION**

      The Humane Society of the United States is a nonprofit organization dedicated to

preventing animal cruelty, exploitation, and neglect.  HSUS recently published a report regarding

the Zoological Association of America ("ZAA") which raises significant questions about the

Association's accreditation practices.  Among many other things, the HSUS Report recounts that

the ZAA has accredited certain members that have criminal histories, and it accurately reports

that Mario Tabraue was convicted for running a violent drug trafficking operation which used an

exotic animal business as front for the enterprise. He was sentenced to 100-years in prison for his

heinous crimes.

The claims filed by this notorious former drug trafficker are meritless for several reasons. First, Plaintiffs' defamation claims (Counts I & III) fail because the statement that he used an exotic animal business as a front for a violent drug operation is not actionable because it is true and also constitutes a privileged report of a criminal proceeding and an accurate republication of information reported by a reputable news source. The claims that Tabraue and his roadside zoo, Zoological Wildlife Foundation, Inc. ("ZWF") were defamed also fail as a matter of law because the violent convicted felon is "libel proof" and HSUS' statements are not "of and concerning" ZWF. The defamation by implication claims (Counts II & IV) are meritless because the accurate report of Tabraue's violent criminal history does not state or imply that his criminal activity is ongoing, or that he is not competent to operate a zoo or that his animals are in danger.  Rather, it is one fact among many which raise concerns about the ZAA's accreditation standards and application process. Finally, the FDUTPA claim (Count V) fails because the complaint alleges no product that Plaintiffs consume that is produced by HSUS.

For these and the other reasons set forth below, the Complaint should be dismissed in its entirety with prejudice.

## RELEVANT FACTUAL ALLEGATIONS

**A.    Plaintiff Mario Tabraue Was Convicted And Sentenced To 100 Years For Leading A Violent Drug Trafficking Ring Which Used His Former Animal Business As The Criminal Enterprise**

Plaintiff Mario Tabraue is the co-founder, president, and part owner of the Zoological Wildlife Foundation.  Compl. ¶ 16.  He is also a convicted felon. *See id.* ¶ 17.  In 1987, Tabraue, along with several other co-conspirator defendants, were indicted for, *inter alia,* conspiracy to engage in racketeering activities, racketeering, continuing criminal enterprise, conspiracy to possess with intent to distribute marijuana and cocaine, importation of marijuana, possession

with intent to distribute marijuana and cocaine, obstruction of justice, tampering with a witness, and possession of unregistered firearms.  *See* Indictment, attached hereto as Exhibit 1.[1]

The Indictment alleged that the drug ring operated for at least 10 years, and that it smuggled at least $79 million worth of marijuana as well as cocaine into Louisiana and Florida. *See id.* at pp. 12-61.  It further alleged that the drug ring obstructed justice by executing and dismembering a federal informant.  *Id.* at pp. 11-12.  Finally, the Indictment charged Tabraue with complicity in the murder of his estranged ex-wife who allegedly threatened to disclose his drug operation to the authorities.  *Id.* at p. 12.

The Indictment alleged that Tabraue employed several of the co-conspirator defendants at his exotic animal business, Pets Unlimited, Inc., d/b/a Zoological Imports Unlimited.  *Id.* at ¶¶ 109, 113, 138.  According to the Indictment, on various occasions these co-conspirators "distributed quantities of cocaine" to individuals "at defendant MARIO S. TABRAUE'S business, Zoological Imports."  *Id.* ¶¶ 119 & 139.  The Indictment also alleged that Tabraue's business, Zoological Imports Unlimited, was used to hold meetings, to cut and weigh cocaine, and to receive and re-distribute the drugs.  *Id.* at ¶¶ 118, 119, 139, 141-48, 151.

The Indictment sought forfeiture of Tabraue's business, Zoological Imports Unlimited, under 18 U.S.C. § 1963(a)(2) because the business "w[as] used, or intended to be used, by said defendant in any manner and part, to commit and facilitate the violations set forth in Counts III, and V through XIII of this indictment, pursuant to Title 21, United States Code, Section 853(a)(2)."  *Id.* at pp. 73-75.  The Indictment also alleged that Zoological Imports Unlimited "afforded defendant [Tabraue] a source of control over the continuing criminal enterprise alleged

---

[1] In deciding a motion to dismiss, a court may consider the complaint, its attachments, and documents attached to the defendant's motion to dismiss if the attached documents are referred to in the plaintiff's complaint and central to the plaintiff's claims.  *See Brown v. One Beacon Ins. Co. Inc.*, 317 F. App'x 915, 917 (11th Cir. 2009).  Thus, the Court may properly consider the Indictment because it is referenced in the complaint and central to its allegations. Compl. ¶ 21.

in Count III of this indictment, pursuant to Title 21, United States Code, Sections 848 and 853(a)(3)."  *Id.* at p. 75.

Tabraue was convicted of 15 Counts asserted against him in the Indictment, including Counts III, V-X, and XII-XIII.  *See* April 18, 1989 Judgment Including Sentence Under the Sentencing Reform Act (the "Judgment"), attached hereto as Exhibit 2.  Tabraue was found guilty of every charge except complicity in his wife's killing.  *See id*.  The Judgment sentenced Tabraue to a 100-year prison sentence in the custody of the United States Bureau of Prisons.  *Id.* at 3.   Mr. Tabreau ultimately served only 12 years in prison because he became a federal informant and helped build other cases against murderers, other high level drug traffickers and money launderers.  *See* David Kidwell, *Sentenced to 100 Years, Tattling Kingpin Freed After 12*, Miami Herald, August 27, 2000, attached hereto as Exhibit 3.[2]

**B.     Plaintiff Tabraue's Notorious Criminal Conduct Was Widely Reported By The Miami Herald And Other Reputable News Publications**

Tabraue's criminal activities and conviction were widely reported and succinctly recounted in an April 14, 1989 Miami Herald Article.  *See* Heather Dewar, *Drug Boss Who Imported Exotic Animals as a Cover Given 100-Year Sentence*, Miami Herald, April 14, 1989, at 2B, attached hereto as Exhibit 4.  The article related in pertinent part:

> Convicted drug dealer Mario Tabraue, described by a prosecutor as "the chairman of the board" of a ring that bribed police and committed an execution-style murder to protect its smuggling operation, drew a 100-year prison sentence from a federal judge Thursday.
>
> *     *     *
>
> The case was dubbed "Operation Cobra" in a reference to Mario Tabraue's exotic animal business, which prosecutors said was a cover for the drug ring.

---

[2] Tabraue's first attempt to have his sentence reduced, in 1997, was rejected by the presiding trial judge and sentencing judge, the Honorable Senior U.S. District Judge James Kehoe.  *Id*.  It was not until after Judge Kehoe's death that Judge Shelby Highsmith, in 1999, agreed to reduce Tabraue's sentence and release him from prison after only 12 years of incarceration.  *Id*.

* * *

> Other witnesses testified that two defendants were involved in the July
> 1980 murder of government informant Larry Nash, whose body has never
> been found.  Witnesses said Nash's body was dismembered and cremated.

*Id.*; *see also Key Figure in Drug-Smuggling Ring Draws 100 Years*, Associated Press, April 13,

1989, attached hereto as Exhibit 5.

In 2000, Tabraue was released from jail after serving just 12 years because he became a

federal informant.  The Miami Herald reported on his release in an article entitled *Sentenced to*

*100 Years, Tattling Kingpin Freed After 12 Years*, Miami Herald, August 27, 2000.  The article

made the following observations:

> It's been 20 years since Mario Tabraue hacked the body of a federal
> informant with a machete, 13 since he bribed his last cop, 11 since he was
> convicted as "chairman of the board" of one of South Florida's most
> prolific and violent drug gangs.
>
> * * *
>
> Tabraue was released last November, after 12 years in prison, because he
> became a federal snitch and helped build other cases against murderers,
> hi-level drug traffickers and money launderers. . . .
>
> In the nine months he's been out, Tabraue has lived a quiet life and has
> gone far to re-establish the exotic-animal business that federal authorities
> say was once a front for his deals . . . .

*Id.*

### C.    HSUS Issues A Report Regarding The Zoological Association Of America Which Accurately Recounts Tabraue's Criminal History

HSUS is a nonprofit animal protection organization whose mission is to prevent animal

cruelty, exploitation and neglect.  Compl. ¶ 9.  HSUS has published a report which raises

substantial concerns about the facilities, members, and activities of the Zoological Association of

America ("ZAA"), "a national zoo accreditation organization."  Compl. ¶ 14.  The Report's

concerns about the ZAA are summarized in the syllabus of the Report as follows:

> The deceptively named Zoological Association of America (ZAA) is a
> fringe group with weak standards that endorses poorly run roadside zoos,
> traveling zoos, and private menageries; and promotes the private

> ownership of exotic pets as well as the commercialization of wildlife. Despite threats to public safety and animal welfare, ZAA standards allow public contact with dangerous animals.

Compl. Ex. A, D.E. 1-2, ZAA Analytical Report of Standards, Practices, and Facilities ("Report") at 22 of 52. The Report explains that "[c]oncerns about ZAA's facilities, members, and activities" include the following which are detailed in Appendix 1:

- Individuals convicted of felonies, wildlife trafficking, and cruelty to animals
- Animal attacks and escapes
- Allowing the public to have direct and unsafe contact with dangerous wild animals
- Disposing of unwanted wild animals in harmful and irresponsible ways
- Inexperienced staff and insufficient staffing levels
- Numerous USDA fines and official warnings for serious and chronic problems
- Serious welfare concerns found at ZAA facilities include:
    - inadequate veterinary care
    - inhumane methods of euthanasia
    - inadequate feeding
    - filthy drinking water
    - lack of shelter from sunlight and the elements
    - cramped, undersized, and filthy enclosures
    - little to no environmental enrichment
    - depriving newborn bears, big cats, and primates of maternal care
    - subjecting big cats to declawing – a procedure that does not comply with the federal Animal Welfare Act requirements for adequate veterinary care because it causes considerable pain and chronic health problems

*Id.*

Appendix 1 of the Report then provides the support for these concerns in separate subsections. Report, D.E. 1 at 35 of 52. A subsection entitled "Criminal Records" accurately recounts Tabraue's criminal history in the following paragraph:

> Mario Tabraue, owner of Zoological Wildlife Foundation in Florida, was released from prison in 2000 after serving just 12 years of a 100-year sentence.  Tabraue, described by a federal agent as a "ruthless and violent drug dealer," had been charged in a federal racketeering indictment that included murder, drug trafficking, corruption, and obstruction of justice. Tabraue used a machete and circular saw to cut up the body of a federal informant.  Before his arrest, Tabraue used an exotic animal business as a front for his drug trafficking.

*Id.*[3]   There are no statements in this subsection stating or implying that Tabraue is currently engaging in any criminal activity, or that he is using his current animal business as a front for any nefarious activity.   Moreover, neither Tabraue, nor his company, are referenced in the sections of the Report dealing with animal escapes at zoos; allowing dangerous interactions between the public and zoo animals; inhumane treatment of animals; insufficient, untrained, and unqualified staff; financial instability; inadequate space for animals; disposing of animals in harmful and irresponsible ways; or unprofessional conduct.[4]  Report, D.E. 1-2 at 27-37 of 52.

> **D.    Tabraue And His Company File A Five-Count Complaint Alleging That The HSUS Report Falsely States That He Used His Animal Business As A Front For His 1980s Drug Ring And Implying That He Is Engaged In Similar Misconduct Today**

On or about August 12, 2015, Tabraue and his company, "Zoological Wildlife Foundation, Inc., filed a five-count complaint against HSUS.  Counts I and III allege that the statement that Tabraue "used an exotic animal business as a front for drug trafficking is false" and defames him and his company.  *Id.* at ¶ 22.  Counts II and IV claim the statements "falsely

---

[3] The end of this paragraph concludes with a citation to a Miami Herald Article, David Kildwell, *Sentenced to 100 Years, Tattling Kingpin Freed After 12*, Miami Herald, August 27, 2000, which supports the statements contained in the Report.  Report, D.E. 1-2 at 35, 45 of 52.

[4] The Report's subsection on animal attacks references a 2014 incident in which a construction worker at ZWF "had his thumb bitten off by a tiger when he stuck his hand into the animal's cage," and the subsection on USDA enforcement actions notes that, in 2009, Mr. Tabraue was involved in a USDA administrative court proceeding where he "admitted to providing falsified documents and making false statements to the USDA while helping an unlicensed individual acquire a tiger."   Report, D.E. 1-2 at 26, 38 of 52.  Plaintiffs do not contend that these statements are false or defamatory.

imply that Tabraue is a dangerous criminal to discredit his reputation as a knowledgeable zoo business owner, and imply that he is incapable of operating a zoo and/or is endangering the animals under his care." *Id.* at ¶ 35.   Count V claims the Report violates Florida's Unfair and Deceptive Trade Practices Act, Fla. Stat. § 501.201 *et seq.*   For the reasons explained below, the Complaint should be dismissed in its entirety with prejudice.

## LEGAL STANDARD

A motion to dismiss tests whether the plaintiff has properly stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).   While the Court must construe well-pled factual allegations as true and draw reasonable inferences in favor of the plaintiff, the Court should not assume the truth of legal conclusions merely because they are cast in the form of factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).   The "complaint must include '[f]actual allegations [adequate] to raise a right to relief above the speculative level.'" *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007) (citation omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (citation omitted).

## ARGUMENT

### I.   PLAINTIFFS' DEFAMATION CLAIMS FAIL AS A MATTER OF LAW

Under Florida law, a claim for defamation requires (1) the unprivileged publication; (2) to a third party; (3) of a false and defamatory statement concerning another; (4) with fault amounting to at least negligence on behalf of the publisher; (5) with damage ensuing. *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002).   "Defamation is evaluated objectively." *Jeter v. McKeithen*, 2014 WL 4996247, *2 (N.D. Fla. Oct. 7, 2014) (citing *Valentine v. CBS, Inc.*, 698 F. 2d 430, 432 (11th Cir. 1983)).   The test is whether the

"reasonable reader" or the "common mind would understand the words as reasonably susceptible to a defamatory meaning." *Id.*; *Dunn v. Air Line Pilots Ass'n*, 193 F. 3d 1185, 1203 & n.7 ("To determine if this statement was false, we thus look at whether a "reasonable reader" would have thought [it false]."); *Nelson v. Associated Press*, 667 F. Supp. 1468, 1477 (S.D. Fla. 1987). When analyzing whether a statement is defamatory, "it is necessary to read the entire publication in context, and not simply the offending words." *See Dockery v. Fla. Democratic Party*, 799 So. 2d 291, 295 (Fla. 2d DCA 2001); *see also Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 705 (Fla. 3d DCA 1999) ("The Court must consider all the words used, not merely a particular phrase or sentence.") (citation omitted); *Levan v. Capital Cities/ABC, Inc.*, 190 F. 3d 1230, 1240 (11th Cir. 1999).

Where the statement is not defamatory or could not possibly have a harmful effect, a court may dismiss the complaint for failure to state a claim. *See Rubin v. U.S. News & World Report, Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001); *Jeter*, 2014 WL 4996247, at *2. In this case, because Plaintiffs cannot establish a false, defamatory, or unprivileged statement, their claims fail as a matter of law.

### A.   The Alleged Defamatory Statements Are Not Actionable Because They Are True; Plaintiff Tabraue Was, In Fact, Convicted Of Using His Exotic Animal Business As A Front For His Drug Trafficking

As set forth above, the principle element of a defamation claim is a false statement. *See Mile Marker, Inc.*, 811 So. 2d at 845; *Scobie v. Taylor*, 2013 WL 3776270, at *2 (S.D. Fla. July 17, 2013). However, "if the statements are true, the required element of a false statement is not present." *Cape Publ'ns, Inc. v. Reakes*, 840 So. 2d 277, 280 (Fla. 5th DCA 2003). Indeed, "[t]his element, a false statement of fact, has been called the '*sine qua non* for recovery in a defamation action.'" *Johnson v. Clark*, 484 F. Supp. 1242, 1247 (M.D. Fla. 2007) (quoting *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983)).

Plaintiffs do not attribute falsity to the statements that Tabraue: was known as a "ruthless and violent drug dealer"; was charged in a federal racketeering indictment that included murder,

drug trafficking, corruption, and obstruction of justice; used a machete and circular saw to cut up the body of a murdered federal informant; or received a 100-year prison sentence. Plaintiffs contend, however, that the statement that "Before his arrest, Tabraue used an exotic animal business as a front for his drug trafficking" represents a false statement and is defamatory. This is incorrect.

In 1987, Tabraue was, in fact, arrested, charged, and convicted as the kingpin of an expansive, decades-long, drug-trafficking racketeering enterprise. The federal racketeering indictment included charges of murder, drug trafficking, corruption, and obstruction of justice. *See* Indictment. Among the many sordid criminal allegations leveled against Tabraue in the 77-page Indictment are express charges related to the use of his then-existing exotic animal business as his drug racketeering ring. For example, the Indictment alleged that:

> In the Summer of 1984, defendants JOSE LABRADA, JUAN PORTUONDO and MARIO S. TABRAUE met at defendant MARIO S. TABRAUE's pet business, Pets Unlimited, Inc., d/b/a Zoological Imports Unlimited (hereinafter referred to as Zoological Imports), . . . for the purpose of weighing and cutting cocaine.

> In late 1984, defendant JOSE LABRADA, a/k/a JOE VULCANO, distributed quantities of cocaine to an individual known to the grand jury at defendant MARIO S. TABRAUE's business, Zoological Imports.

Indictment, ¶¶ 118-19. It further alleged that:

> On or about February 14, 1986, at Dade County, Florida, a meeting was held at the defendant MARIO S. TABRAUE discussed the sale of several thousand dollars worth of cocaine.

> On or about February 20, 1986, Orlando CICILIA delivered one (1) ounce of cocaine to Jose Martinez at Zoological Imports.

> On or about March 10, 1986, Orlando CICILIA delivered one ounce of cocaine to Jose Martinez, at Zoological Imports

> On or about April 14, 1986, a meeting was held at Zoological Imports in Miami, Florida, in which defendant MARIO S. TABRAUE discussed the sale of one (1) pound of cocaine to Jose Martinez for $13,000.

> On or about May 7, 1986, Orlando CICILIA met with Jose Martinez at Zoological Imports, for the purpose of selling him one (1) pound of cocaine for $13,000.

> On or about May 13, 1986, defendant MARIO S. TABRAUE met with Jose Martinez at Zoological Imports, for the purpose of discussing the sale of one (1) kilogram of cocaine to Jose Martinez for $26,000.
>
> On or about July 22, 1986, Jose Martinez met with Orlando CICILIA at Zoological Imports, for the purpose of discussing a cocaine deal, and received a sample of cocaine from ORLANDO CICILIA.
>
> On or about October 24, 1986, the defendant MARIO S. TABRAUE met with Jose Martinez at Zoological Imports, and discussed the sale of one (1) pound of cocaine to Jose Martinez for $13,000.

*Id.* at ¶¶ 141-48.  The Indictment also lists Tabraue's exotic animal business, Pets Unlimited, Inc. d/b/a Zoological Imports Unlimited, as a property subject to forfeiture for its use in the drug trafficking ring.  *Id.* at ¶¶ 3A., 4C. p. 73, 75.  Tabraue was convicted of these racketeering charges, which included using his exotic animal business as a front for his drug-related crimes, and, on April 13, 1989, was sentenced to 100 years in prison.  *See* Judgment.

Thus, the statement that "Before his arrest, Tabraue used an exotic animal business as a front for his drug trafficking" is demonstrably true.  Accordingly, the *sine qua non* of a defamation action – a false statement – is absent.  *See Byrd*, 433 So. 2d at 595.  Plaintiffs' claims fail as a matter of law.  *See Nelson*, 667 F. Supp. at 1477 (true statements not actionable); *see also Applestein v. Knight Newpapers, Inc.*, 337 So. 2d 1005 (Fla. 3d DCA 1976); *Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So. 2d 1025 (Fla. 3d DCA 1981).

### B.    The Alleged Defamatory Statements Are Not Actionable Because It Is A Privileged Republication Of Judicial Proceedings

"[I]n Florida there is a qualified privilege to make reports of judicial and quasi-judicial proceedings as long as they are accurate, fair and impartial."  *Huszar v. Gross*, 468 So. 2d 512, 516 (Fla. 1st DCA 1985); *Ortega v. Post-Newsweek Stations, Fla., Inc.*, 510 So. 2d 972, 975 (Fla. 3d DCA 1987) (same); *see also Rasmussen v. Collier Cnty. Publ'g Co.*, 946 So. 2d 567, 570-71 (Fla. 2d DCA 2006).  "This statement merely means that the report of judicial proceedings must be correct."  *Alan v. Palm Beach Newspapers, Inc.*, 973 So. 2d 1177, 1180 (Fla. 4th DCA 2008) (citation omitted).  Moreover, judicial documents are "a matter of public

record and anyone . . . ha[s] a right to obtain and publish them." *See Della-Donna v. Nova Univ., Inc.,* 512 So. 2d 1051, 1056 (Fla. 4th DCA 1987). Thus, the accurate republication of a judicial pleading, opinion, or proceeding is privileged. *Id.*

In this case, the Complaint alleges that HSUS defamed Plaintiffs by stating that before his arrest, "Tabraue used an exotic animal business as a front for his drug trafficking." *See, e.g.,* Compl. ¶ 22. However, as set forth above, this statement is a fair and accurate republication of the Indictment and Judgment in the United States District Court for the Southern District of Florida. *See supra.* at Sec. I.A. Indeed, the Indictment charging Tabraue for his role as the leader of a drug trafficking ring, and the Judgment convicting him of such crimes and sentencing him to 100-years in prison, make clear that, in fact, before his arrest, Tabraue used an exotic animal business as a front for his drug operations. *See id.* Because this statement regarding Tabraue's use of his exotic animal business as a front for his drug ring is an accurate republication of the federal court proceedings, the defamation claim must be dismissed. *See, e.g., Alan*, 973 So. 2d at 1180 (affirming dismissal where allegedly defamatory statements, derived from court documents and court proceedings surrounding plaintiff's arrest and trial, were "fair, accurate, and impartial"); *Huszar*, 468 So. 2d at 516 (affirming dismissal of complaint where report of judicial proceeding was "accurate, fair and impartial."); *see also Della-Donna*, 512 So. 2d at 1056.

### C. The Alleged Defamation Is Not Actionable Because It Is An Accurate Republication Of Information Reported By The Miami Herald Regarding Tabraue's Criminal Conviction

Under Florida law, it is well settled that:

> The mere reiteration in a daily newspaper, of an actually false, but apparently authentic news dispatch, received by a newspaper publisher from a generally recognized reliable source of daily news, such as some reputable news service agency engaged in collecting and reporting the news, cannot through publication alone be deemed per se to amount to an actionable libel by indorsement, in the absence of some showing from the nature of the article published, or otherwise, that the publisher must have acted in a negligent, reckless, or careless manner in reproducing it to another's injury.

*Layne v. Tribune Co.*, 146 So. 234, 238 (Fla. 1933); *see also Nelson v. Associated Press, Inc.*, 667 F. Supp. 1468, 1476 (S.D. Fla. 1987) (magazine entitled to rely on reputable news service reporting as a defense to publication of alleged defamatory statements).  This makes sense since "[u]nder common law, one who heard a slander was not libel for repeating it, if he did so in the same words, and at the same time gave in publishing it his authority for the statement made." *Nelson*, 667 F. Supp. at 1476 (citing *Layne*, 146 So. at 238).

In this case, the alleged defamatory statements were an accurate republication of judicial proceedings reported by the Miami Herald with express attributions to the article.  *See* Report D.E. 1-2 at 35, 45 of 52 (citing David Kildwell, *Sentenced To 100 Years, Tattling Kingpin Freed After 12*, Miami Herald, August 27, 2000); Ex. 3 hereto.  The Complaint contains no allegations that the Miami Herald, a reliable and reputable news provider, was negligent or careless in reporting or summarizing information they received from the judicial proceedings or republished from other reputable wire services.  Nor could it; numerous newspaper articles and Associated Press wire service reports published nearly identical summaries of Tabraue's indictment and subsequent conviction.  *See, e.g.,* Heather Dewar, *Drug Boss Who Imported Exotic Animals As A Cover Given 100-Year Sentence*, Miami Herald, April 14, 1989 Page 2B; *Key Figure In Drug-Smuggling Ring Draws 100 Years*, Associated Press, April 13, 1989.  HSUS cannot be liable for negligently publishing allegedly defamatory statements because, just as newspapers and magazines are entitled to rely on reputable news sources in publishing news reports, HSUS is similarly entitled to rely on information contained in articles published by reliable and reputable news sources in publishing its reports.  Plaintiffs' claims fail as a matter of law.

> ### D.    The Alleged Defamatory Statements Are Not "Of And Concerning" ZWF

To be actionable, Florida law requires that the allegedly defamatory statement be "of and concerning" the plaintiff.  *See, e.g., Langner v. Charles A. Binger, Inc.,* 503 So. 2d 1362, 1365 (Fla. 3d DCA 1987); *see also* 50 Am. Jur. 2d *Libel and Slander* § 330 (2015) ("an action for defamation is personal to the party defamed and may not be asserted by a third party").

Similarly, "a corporation, like a private individual, cannot prevail in a libel action unless the allegedly defamatory statement was published 'of and concerning' the corporation." *Church of Scientology of Cal. v. Flynn,* 578 F. Supp. 266, 268 (D. Mass. 1984) (applying Florida law).  As the *Flynn* Court explained:

> Whether a corporation's standing in the community was actually diminished is not relevant if the publication at issue did not falsely charge the corporation itself with some kind of impropriety:  "One who is not himself libelled cannot recover even though he has been injured by the libel published concerning another."

*Id.* at 268.

The allegedly defamatory statement that "Before his arrest, Tabraue used an exotic animal business as a front for his drug trafficking" is "of and concerning" Tabraue and his prior exotic animal business, not the Zoological Wildlife Foundation, Inc.  Indeed, ZWF, which is an alleged zoo, is not identified as the exotic animal business used for Tabraue's criminal conduct, nor was it even in existence prior to his arrest in 1987.  Accordingly, ZWF's defamation claims should be dismissed.  *See McIver v. Tallahassee Democrat, Inc.,* 489 So. 2d 793, 794 (Fla. 1st DCA 1986) (allegation that corporation's president had offered bribe to City Commissioner was not of and concerning corporation); *see also Flynn,* 578 F. Supp. at 268 (allegedly defamatory statements regarding members of church were not of and concerning church).

### E.    Plaintiff Tabraue's Conviction And 100-Year Sentence For Drug Trafficking Has Rendered Him Libel-Proof

Under the "libel-proof plaintiff" doctrine, when a plaintiff's reputation is so diminished that only nominal damages at most could be awarded because his reputation is not capable of sustaining further harm the complaint must be dismissed as a matter of law.  *See Lamb v. Rizzo*, 391 F.3d 1133, 1137 (10th Cir. 2004) (citation omitted); *see also Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 303-04 (2d Cir. 1986); *Wynberg v. Nat'l Enquirer, Inc.*, 564 F. Supp. 924, 927-28 (C.D. Cal. 1982).  As the Court in *Wynberg* explained:

> When . . . an individual engages in conspicuously anti-social or even criminal behavior, which is widely reported to the public, his reputation

-14-

diminishes proportionately.  Depending upon the nature of the conduct, the number of offenses, and the degree and range of publicity received, there comes a time when the individual's reputation for honesty and fair dealing is sufficiently low in the public's estimation that he can recover only nominal damages for subsequent defamatory statements.

First Amendment considerations of free press and speech, promoting society's interest in uninhibited, robust, and wide-open discussion, must prevail over an individual's interest in his reputation in such cases.  An individual who engages in certain anti-social or criminal behavior and suffers a diminished reputation may be "libel proof" as a matter of law, as it relates to that specific behavior.

564 F. Supp. at 928.

In this case, in is undisputed that Tabraue: was known as a "ruthless and violent drug dealer"; used a machete and circular saw to cut up and dispose of the body of a murdered federal informant; was charged in a federal racketeering indictment that included murder, drug trafficking, corruption, and obstruction of justice; was convicted of 15 Counts of racketeering and drug trafficking offenses; and was sentenced to 100 years in prison.  And while Tabraue only served 12 years in prison for his crimes, he was released early only by – ironically – becoming a federal informant himself, snitching on his former contemporaries and others to build cases against murderers, high-level drug traffickers, and money launderers.  Tabraue's long and notorious criminal career and vast cocaine empire were widely covered and reported by the news media following his arrest, his conviction, and his subsequent release after 12 years in prison. *See, e.g.,* Jean Thompson, *Animal Importer Indicted U.S. Charges Seven As Smuggling Ring*, The Sun Sentinel, December 17, 1987, Ex. 6 hereto; *Florida Drug Ring Reported Broken*, The New York Times, December 17, 1987, Ex. 7 hereto; *Key Figure In Drug-Smuggling Ring Draws 100 Years*, The Associated Press, April 13, 1989; *Drug Boss Who Imported Exotic Animals As A Cover Given 100-Year Sentence*, The Miami Herald, April 14, 1989; *Sentenced To 100 Years, Tattling Kingpin Freed After 12*, The Miami Herald, August 27, 2000.  Given the nature of Tabraue's criminal conduct, the variety and number of serious offenses with which he was charged, the amount of time he was sentenced for his criminal drug enterprise, and the degree of

-15-

widespread publicity his crimes received, it is beyond dispute that Tabraue's reputation is incapable of sustaining further harm by the allegedly defamatory statement that "Before his arrest, Tabraue used an exotic animal business as a front for his drug trafficking."  Accordingly, because Tabraue is libel proof, any allegedly defamatory statements published by HSUS are not actionable as a matter of law.  *See Lamb*, 391 F.3d at 1140.

>    **F.**    **Plaintiffs' Claims For Defamation By Implication (Counts II And IV)**
>             **Independently Fail As A Matter Of Law**

In order to state a claim for defamation by implication, plaintiffs must demonstrate that HSUS's publication either "(1) juxtaposes a series of [truthful] facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts."  *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).  Plaintiffs allege HSUS defamed them when it published true statements about Mario Tabraue's 30-year-old criminal conviction because, they argue, the statements create false implications about Tabraue and his business. Plaintiffs' defamation by implication claims should be dismissed because HSUS's publication, taken as a whole and in context, does not suggest to reasonable readers the defamatory implications plaintiffs ascribe to it.

Plaintiffs have blatantly and materially altered the quotation from HSUS's publication to attempt to imply that Tabraue is currently charged with federal racketeering and still involved in drug trafficking, corruption, obstruction of justice, and murder.  The statement, as improperly rewritten in the Complaint, reads:

> Mario Tabraue, owner of Zoological Wildlife Foundation in Florida, was released from prison in 2000 after serving just 12 years of a 100-year sentence.  Tabraue, described by a federal agent as a "ruthless and violent drug dealer," ***has*** been charged in a federal racketeering indictment that included murder, drug trafficking, corruption, and obstruction of justice. Tabraue used a machete and circular saw to cut up the body of a murdered federal informant.

Compl. ¶¶ 34, 47 (emphasis added).  Plaintiffs contend that this "revised" statement falsely implies that Tabraue is *currently* a "dangerous criminal" in order to "discredit his reputation as a

knowledgeable zoo business owner, and imply that he is incapable of operating a zoo and/or is endangering the animals under his care" and that "ZWF is *currently* being used for the commission of illegal acts and is not reputable."  Comp. ¶¶ 35, 48 (emphasis added).

A review of HSUS's publication reveals that the statements make abundantly clear that Tabraue's racketeering indictment and accompanying criminal activity occurred in the 1980's:

> Mario Tabraue, owner of Zoological Wildlife Foundation in Florida, was released from prison in 2000 after serving just 12 years of a 100-year sentence.  Tabraue, described by a federal agent as a "ruthless and violent drug dealer," **_had_** been charged in a federal racketeering indictment that included murder, drug trafficking, corruption, and obstruction of justice. Tabraue used a machete and circular saw to cut up the body of a murdered federal informant. **_Before his arrest_**, Tabraue used an exotic animal business as a front for his drug trafficking.

Report, D.E. 1-2 at 35 of 52 (emphasis added).  Plaintiffs have changed the tense of the quotation from past to present (from "had" to "has") to imply that Tabraue's criminal activity is ongoing. And Plaintiffs omitted the last sentence of the paragraph, underlined above, which makes clear that Tabraue's criminal misconduct occurred in the past.  A reasonable reader cannot objectively read the statements as actually published to suggest or imply that Tabraue or ZWF is currently engaged in illegal activity.

It is clear that the reason HSUS included the information about Tabraue's criminal history was because ZAA's decision to accredit ZWF raises "concerns" about ZAA's accreditation process and not to imply that Tabraue is not knowledgeable or fit to operate a zoo or that ZWF's animals are in danger.  The statements about Tabraue's criminal history appear in an Appendix attached to the Report that outlines numerous "Concerns about ZAA's facilities, members, and activities."  The information specifically appears in a subsection titled "Criminal History."  Here, it would be evident to a reasonable reader that Tabraue's criminal history was included in the Report because the fact that he had been previously convicted of running a criminal enterprise through the operation of an exotic animal business raises "concerns" about ZAA's accreditation standards and application process.  Report, D.E. 1-2 at 22 of 52.  This is

especially evident when reviewing Appendix 2 to the Report, which compares the ZAA's relatively lax accreditation standards and oversight with those of the Association of Zoos & Aquariums (AZA),[5] and the entirety of the Report's "Criminal History" subsection and its inclusion of other examples of ZAA-accredited zoos that are operated by convicted felons. Report, D.E. 1-2 at 39-42 of 52.

Plaintiffs' claim that HSUS's statements about Tabraue falsely imply that he is unfit or otherwise lacking in knowledge to operate a zoo or that ZWF's animals are in danger is also an unreasonable reading considering the Appendix is divided into multiple subsections that categorize different causes of "concern" about ZAA's accreditation standards.  The statements are not published in a subsection related to the adequacy of zoological staff or animal welfare. The listed subsections of the Report are Animal Attacks; Escapes; Safety Concerns; Declawing Big Cats; Welfare Concerns; Insufficient, Untrained and Unqualified Staff; Financial Stability and Succession Planning; Inadequate Space; Disposing of Animals in Harmful and Irresponsible Ways; Unprofessional Conduct; USDA Enforcement Actions; and Criminal History.  Report D.E. 1-2 at 26-38 of 52.  Because the alleged defamatory statements concerning Tabraue appear exclusively in the section titled "Criminal History," and no mention of Tabraue or ZWF is made in the subsections specifically related to "Insufficient, Untrained, and Unqualified Staff" or "Welfare Concerns," it cannot reasonably be imputed that reference to Tabraue's criminal past implies any inference regarding his or ZWF's ability to operate a zoo or care for animals.

*Jeter v. McKeithen*, 2014 WL 4996247 (N.D. Fla. Oct. 7, 2014) is compelling.  There, plaintiff filed a lawsuit against a television news station after it aired a story about the arrest of

---

[5] For example, where ZAA requires accreditation applicants to submit "[A] simple 9-page document that requires the candidate to provide basic contact information as well as very minimal information about the facility's animals, physical site, and programs, only three short questions about safety[.]", AZA requires applicants provide "[a] comprehensive 29-page document" with detailed information about nearly every aspect of its operation, including details about the facility's personnel.  Report D.E. 1-2 at 39 of 52.

her minor son for felony aggravated cyber stalking.  *Id.* at *1.  The suit claimed the station defamed the minor when it stated:  "Even the [suspects who are] minors could wind up facing charges as adults."  *Id*. at *2-3.  The suit alleged the statements implied that "there is more evidence against [plaintiff's son] and the other suspects than against most minors who are charged with a felony."  *Id*. at *3.  The Court granted the news station's motion to dismiss, holding that "[u]nder the objective test, no reasonable viewer of the broadcast would have perceived that this statement made any comment about the amount of evidence that police had against [the minor].  Rather, this entirely accurate statement, even taken with the broadcast as a whole, conveyed to the 'common mind' only the true statements that the minors were being charged with a serious crime and that the state could have legally prosecuted the minors as adults."  *Id.*

Here, like *Jeter*, the reasonable reader or common mind, taking HSUS's Report as a whole, would not infer that the statements about Tabraue's criminal history implied that he or ZWF are currently involved in a criminal enterprise, or as an indictment on his knowledge as a zoo owner, his inability to operate a zoo, or that animals are endangered under his and ZWF's care.  Instead, the inclusion of his past heinous crimes under the subsection "Criminal History," when read together with the whole of the Report including the other incidents of ZAA-accredited zoos owned by felons and the Report's many criticisms of ZAA's lax accreditation standards, implies only one thing which is both obvious from its context and made explicit in the Report: that HSUS has "concerns" about ZAA's accreditation standards and policies.[6]

---

[6] Even if HSUS's statements about Tabraue's criminal history could be read to imply that Tabraue is unfit to run an animal business by virtue of his past use of an animal business to run a violent criminal enterprise, the suggestion would constitute a "pure opinion, the basis of which was fully disclosed" within the Report, and is not actionable.  *See Miami Child World, Inc. v. Sunbeam Television Corp.*, 669 So. 2d 336, 336 (Fla. 3d DCA 1996); *Beck v. Lipkind*, 681 So. 2d 794, 794 (Fla. 3d DCA 1996) (holding "pure opinion" not actionable as libel); *Morse v. Ripken*, 707 So. 2d 921, 922 (Fla. 4th DCA 1998) (pure opinion not actionable under the First Amendment).

## II.   PLAINTIFFS' CLAIMS FOR VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT FAIL BECAUSE PLAINTIFFS ARE NOT CONSUMERS UNDER FDUTPA

The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") protects consumers from those "who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).  Under the statute, only a "consumer" may recover for unfair trade practices.  *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1317 (M.D. Fla. 2000).  "The Florida courts have interpreted 'consumer' as requiring a person or entity to be a 'purchaser' of goods or services" from the defendant.  *Id.* (collecting cases).

In this case, Plaintiffs assert that they "are consumers as defined in section 501.203(7), Florida Statutes, and thus have standing to assert a violation of the Act."  Compl. ¶ 56.  However, notwithstanding this conclusory allegation, Plaintiffs fail to provide any allegations demonstrating that they were "purchasers" of any goods or services offered by HSUS.  Absent such allegations, Plaintiffs' FDUTPA claim fails.  *See Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1296-97 (S.D. Fla. 2014) (dismissing FDUTPA claim with prejudice because plaintiff was not a consumer involved in any consumer transaction); *Shibata*, 133 F. Supp. 2d at 1320-21 (dismissing FDUTPA claim because plaintiff was not a "purchaser" of goods or services from defendant within the meaning of the Act); *Badillo v. Playboy Entm't Grp., Inc.*, 2006 WL 785707, at *6 (M.D. Fla. Mar. 28, 2006) ("Plaintiffs have failed to present any evidence establishing they were *purchasers* of any goods or services offered by Defendant.").

## CONCLUSION

For the foregoing reasons, The Humane Society of the United States respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice.

Dated:  October 2, 2015                    Respectfully submitted,

                                           /s/  Enrique D. Arana
                                           Richard J. Ovelmen (Fla. Bar No. 284904)
                                           rovelmen@cfjblaw.com
                                           Enrique D. Arana (Fla. Bar No. 189316)
                                           earana@cfjblaw.com
                                           Scott E. Byers (Fla. Bar No. 68372)
                                           sbyers@cfjblaw.com
                                           CARLTON FIELDS JORDEN BURT, P.A.
                                           Miami Tower, Suite 4200
                                           100 S.E. Second Street
                                           Miami, Florida  33131
                                           Telephone:  (305) 530-0050
                                           Facsimile:  (305) 530-0055

                                           *Attorneys for Defendant*
                                           *The Humane Society of the United States*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 2nd day of October, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on the following counsel of record via transmission of Notices of Electronic Filing by CM/ECF:

Diana L. Fitzgerald, Esq.
diana@filawyers.com
David C. Isaacson, Esq.
david@filawyers.com
Fitzgerald & Isaacson, LLP
1001 Brickell Bay Drive, Suite 1714
Miami, Florida 33131
Telephone:  (305) 372-7300
Facsimile:  (305) 372-8150

*Attorneys for Plaintiffs*

 /s/ Enrique D. Arana

102320823