# EXHIBIT 1

SE   C:tk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO.  87-928-Cr-KEHOE(S)
18 USC §1962(d)
18 USC §1962(c)
18 USC §1963
18 USC §2
21 USC §848
21 USC §846
21 USC §963
21 USC §952
21 USC §841(a)(1)
18 USC §1952(a)(3)
18 USC §1503
18 USC §1512(b)
26 USC §5861(d)
26 USC §5871

UNITED STATES OF AMERICA,          )

              Plaintiff,           )

                                   )

v.                                 )

MARIO S. TABRAUE,                  )
GUILLERMO TABRAUE, SR.,
FRANCISCO QUINTANA,                )
  a/k/a "PUPI",
JOSE LABRADA,                      )
  a/k/a JOE VULCANO,
ORLANDO CICILIA,                   )
MIGUEL RAMIREZ,                                SUPERSEDING
EDUARDO FERNANDEZ-CARDULI,         )           INDICTMENT
CARLOS PAZOS-SANTANA,              )
ANTONIO MUNIO,
JOSE PEPE ACOSTA,                  )
LUIS VALDESUSO,
  a/k/a "FLACO",                   )
  a/k/a "RECITO",
JUAN PORTUONDO,                    )
and
PHILIP EPSTEIN                     )

              Defendants.          )

The Grand Jury charges that:

THE ENTERPRISE

1.   From an unknown date, believed to be in the Summer of

1976, and continuing up to and including December 16, 1987, the

defendants,

MARIO S. TABRAUE,
GUILLERMO TABRAUE, SR.,
FRANCISCO QUINTANA, a/k/a "PUPI",
JOSE LABRADA, a/k/a JOE VULCANO,
ORLANDO CICILIA,

MIGUEL RAMIREZ,
EDUARDO FERNANDEZ-CARDULI,
CARLOS PAZOS-SANTANA,
ANTONIO MUNIO,
and
JOSE PEPE ACOSTA,

and others known and unknown to the grand jury, did constitute an enterprise, ("The Enterprise"), within the meaning of Title 18, United States Code, Section 1961(4), that is a group of individuals associated in fact which engaged in various criminal activities consisting of: conspiracy to import and the importation of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 952 and 963; conspiracy to possess and distribute, the possession with intent to distribute, and distribution of marijuana, a Schedule I controlled substance, and cocaine, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; travel in interstate commerce to facilitate a cocaine business, in violation of Title 18, United States Code, Section 1952(a)(3); murder, in violation of Florida Statute 782.04; accessory after the fact to murder, in violation of Florida Statutes 777.03 and 775.082; and obstruction of justice, in violation of Title 18, United States Code, Sections 1503 and 1512(b).

## ROLES OF THE DEFENDANTS

2. The role of the defendants in the business of the Enterprise was as follows:

A. <u>MARIO S. TABRAUE</u> arranged for the importation, distribution and sale of large quantities of illegal drugs on

behalf of the Enterprise.  To conduct the drug business, MARIO S. TABRAUE arranged for the importation of marijuana and for its sale in the United States after it was illegally imported.  At times, MARIO S. TABRAUE brokered the loads by arranging for direct shipment to clients of the Enterprise.  On other occasions, MARIO S. TABRAUE took delivery of the marijuana and stored it in stash houses, controlled by the Enterprise, until it was sold and delivered to a client of the Enterprise.  MARIO S. TABRAUE either purchased, brokered, or had a joint financial interest in marijuana loads imported by FRANCISCO QUINTANA, a/k/a "PUPI" and others.  The Enterprise also received and distributed large quantities of cocaine.  MARIO S. TABRAUE and his father, GUILLERMO TABRAUE, SR. received, collected and distributed the proceeds from the sale of marijuana and cocaine on behalf of the Enterprise.

      B.   <u>GUILLERMO TABRAUE, SR.</u> operated the Guillermo Tabraue Jewelry Store at 940 West Flagler Street, Miami, Florida (hereinafter referred to as the "jewelry store").  GUILLERMO TABRAUE, SR. assisted his son, defendant MARIO S. TABRAUE, by placing his son, defendant MARIO S. TABRAUE, in contact with drug importers and distributors who frequented the jewelry store. Many of the drug importers and distributors, who were associated with the Enterprise, including defendant FRANCISCO QUINTANA, a/k/a "PUPI", were introduced to defendant MARIO S. TABRAUE by GUILLERMO TABRAUE, SR. for the purpose of promoting and expanding the Enterprise's drug business.  In addition, defendant GUILLERMO TABRAUE, SR. was responsible for collecting, receiving and

disbursing millions of dollars in cash proceeds generated by the Enterprise.  Specifically, defendant GUILLERMO TABRAUE, SR. acted as a clearing house for drug associates of the Enterprise, receiving and disbursing payments for and on behalf of the importers, suppliers and distributors and collecting payments from clients of the Enterprise.

C.  FRANCISCO QUINTANA, a/k/a "PUPI" was associated with and participated in the affairs of the Enterprise by importing large quantities of marijuana into the United States for and on behalf of defendant MARIO S. TABRAUE and the Enterprise.

D.  JOSE LABRADA a/k/a JOE VULCANO off loaded, possessed, transferred and distributed marijuana and cocaine for the Enterprise.

E.  ORLANDO CICILIA received, possessed, warehoused and distributed quantities of cocaine for and on behalf of the Enterprise.

F.  MIGUEL RAMIREZ received, possessed and distributed quantities of marijuana for the Enterprise.

G.  EDUARDO FERNANDEZ-CARDULI supplied machine guns and silencers to the Enterprise and otherwise associated with and participated in the affairs of the Enterprise.

H.  CARLOS PAZOS-SANTANA received, possessed and distributed quantities of marijuana and cocaine for the Enterprise.

I.  ANTONIO MUNIO was a soldier or employee of the Enterprise and as such, assisted the Enterprise in off-loading,

storing, guarding, transferring and distributing marijuana and cocaine for the Enterprise.

J.   JOSE PEPE ACOSTA was a soldier or employee of the Enterprise and as such, assisted the Enterprise in off-loading, storing, guarding, transferring and distributing marijuana and cocaine for the Enterprise.

### PURPOSE, OBJECTS AND
### OPERATION OF THE ENTERPRISE

3.   The Enterprise, operated in the following manner:

A.   The Enterprise imported into the United States, large loads of marijuana for domestic distribution and sale. Defendant MARIO S. TABRAUE would contact defendant FRANCISCO QUINTANA, a/k/a "PUPI" and other importers associated with the Enterprise, who would make arrangements for the purchase and shipment of marijuana from Colombia to the United States.

B.   The defendants FRANCISCO QUINTANA, a/k/a "PUPI" and MARIO S. TABRAUE, and others associated with the Enterprise, would arrange for boats, trucks and other vehicles to transport the drugs.  Boats would be used to import the drugs into Florida, Georgia and Louisiana.  The marijuana would then be transported by vehicles from the off-load areas to various stash houses under the control of the Enterprise or its clients.  On occasions when the Enterprise retained possession of the marijuana for resale, the Enterprise would utilize individuals such as defendants JOSE LABRADA, a/k/a JOE VULCANO, ANTONIO MUNIO, JOSE PEPE ACOSTA and others, to off-load and transfer the marijuana from the vessels, the trucks and other vehicles, unload the trucks at the stash houses and count, weigh and record the amount of marijuana

received and distributed. Later, the marijuana would then be transferred to customers of the Enterprise. On those occasions when defendant MARIO S. TABRAUE brokered the loads of marijuana, he arranged for the delivery to be made directly to the clients of the Enterprise after the marijuana was off-loaded.

C.   In those instances when the marijuana was stored at stash houses under the control of the Enterprise, defendant MARIO S. TABRAUE would contact distributors and clients of the Enterprise, such as defendants MIGUEL RAMIREZ and CARLOS PAZOS-SANTANA, and arrange for the delivery of the marijuana to them, including the manner of delivery, the price and terms of payment. Defendants JOSE LABRADA, a/k/a JOE VULCANO, ANTONIO MUNIO and JOSE PEPE ACOSTA and others, under defendant MARIO S. TABRAUE's supervision, would assist in transferring the marijuana from the stash houses to trucks belonging to the clients or the Enterprise.

D.   The number, weights and amount of bales being delivered by defendant MARIO S. TABRAUE to the Enterprise's clients, and the amount of money received on account, would be recorded and kept by defendants MARIO S. TABRAUE and GUILLERMO TABRAUE, SR. After each load was distributed and paid for, these records would be destroyed.

E.   Payment for each load of marijuana would usually be made to defendant MARIO S. TABRAUE or his father, defendant GUILLERMO TABRAUE, SR., usually at the jewelry store or MARIO S. TABRAUE'S residence. Often, the distributors would pay for at least a portion of the load immediately upon their receipt of the

marijuana.   The balance owed would be paid to defendants MARIO S. TABRAUE or GUILLERMO TABRAUE, SR., usually within a few weeks. As payments were received from the distributors, the defendants MARIO S. TABRAUE and GUILLERMO TABRAUE, SR., would arrange for payments to be made to defendant FRANCISCO QUINTANA, a/k/a "PUPI", and the other importers and suppliers associated with the Enterprise, for the marijuana imported and supplied by them to the Enterprise.

F.   Defendants MARIO S. TABRAUE and CARLOS PAZOS-SANTANA were partners in a marijuana distribution network in the New York area.   Defendant CARLOS PAZOS-SANTANA would receive quantities of marijuana from the Enterprise and transport it to New York utilizing vans and trucks.   Upon arriving in the New York area, defendant CARLOS PAZOS-SANTANA would then be in charge of distributing the marijuana in the New York area.   At times, CARLOS PAZOS-SANTANA would also receive cocaine from the Enterprise and distribute it for the Enterprise through the New York network.

G.   The Enterprise used associates, such as JOSE LABRADA, a/k/a JOE VULCANO and uniformed police officers working for the Enterprise, to collect, receive and count the monies received from the Enterprise's sales.

H.   During the period of time alleged in the indictment, the Enterprise would also receive and distribute large quantities of cocaine. The Enterprise, through defendants MARIO S. TABRAUE, CARLOS PAZOS-SANTANA, ORLANDO CICILIA and others, would either receive large quantities of cocaine on

consignment and distribute it to its various clients throughout the United States or broker the sale between the supplier and a distributor. Depending on the size of the transaction and the client involved, the arrangements for the receipt and delivery of cocaine, and the price and manner of payment would be made through defendants MARIO S. TABRAUE, GUILLERMO TABRAUE, SR. or ORLANDO CICILIA.

I.   Defendants ORLANDO CICILIA and JOSE LABRADA, a/k/a JOE VULCANO, would receive cocaine on consignment from the Enterprise for distribution to their own customers. Large quantities of cocaine would also be received, stored or ware-housed by ORLANDO CICILIA for later distribution by defendant MARIO S. TABRAUE, to customers of the Enterprise. When defendant MARIO S. TABRAUE or a customer of the Enterprise required a quantity of cocaine, defendant MARIO S. TABRAUE would instruct defendant ORLANDO CICILIA as to the amount required and where it was to be delivered. Defendant ORLANDO CICILIA would then arrange for the delivery of that cocaine from storage as in-structed by defendant MARIO S. TABRAUE. Quantities of cocaine would either be delivered on account or for cash, the proceeds would then be collected by associates of the Enterprise and delivered to defendant MARIO S. TABRAUE.

J.   Defendant MARIO S. TABRAUE, and other members and associates of the Enterprise, would take steps necessary to secure, protect and conceal the affairs of the Enterprise and the profits derived therefrom. The affairs of the Enterprise were protected by armed employees and uniformed police officers bribed

by the Enterprise. Defendants MARIO S. TABRAUE, CARLOS PAZOS-SANTANA, MIGUEL RAMIREZ, EDUARDO FERNANDEZ-CARDULI and others associated with the Enterprise would be armed with unlawful machine guns and silencers supplied to the Enterprise by defendants MARIO S. TABRAUE and EDUARDO FERNANDEZ-CARDULI. Force, violence, including murder, bribery of police officers and attempts to induce false testimony before a federal grand jury, were all utilized by the Enterprise to protect and conceal its affairs from interference by law enforcement authorities and to prevent defection among the Enterprise's associates. Indeed to facilitate the Enterprise's continued and unfettered operation, confidential informant, Larry Nash and defendant MARIO S. TABRAUE's wife, Maria Tabraue, were murdered by associates of the Enterprise. Other associates of the Enterprise then participated in the destruction of evidence that would implicate defendant MARIO S. TABRAUE and other associates of the Enterprise in the murders.

K.   The Enterprise would conceal the source, nature and amount of its illegal profits by the use of an off-shore corporation, investments, cashiers checks, false loans and mortgages, trusts and attorney trust account.

<u>THE RACKETEERING CONSPIRACY</u>

4.   From on or about an unknown date believed to be in the the Summer of 1976, and continuing up to and including December 16, 1987, in the Southern District of Florida and elsewhere, the defendants,

MARIO S. TABRAUE,
GUILLERMO TABRAUE, SR.,

-9-

FRANCISCO QUINTANA, a/k/a "PUPI",
JOSE LABRADA, a/k/a JOE VULCANO,
ORLANDO CICILIA,
MIGUEL RAMIREZ,
EDUARDO FERNANDEZ-CARDULI,
CARLOS PAZOS-SANTANA
ANTONIO MUNIO,
and
JOSE PEPE ACOSTA,

and others known and unknown to the grand jury, being members of,
employed by and associated with the Enterprise, as further
described in paragraph 1 through 3 above, did knowingly and
intentionally combine, conspire, confederate and agree together
and with other persons known and unknown to the grand jury to
violate Title 18, United States Code, Section 1962(c), that is to
conduct and participate, directly and indirectly, in the conduct
of the affairs of the Enterprise through a pattern of racketeer-
ing activity, as defined by Title 18, United States Code,
Sections 1961(1) and 1961(5) as set forth in paragraphs 5 and 6
of this count.

All in violation of Title 18, United States Code, Section
1962(d).

THE PATTERN OF RACKETEERING ACTIVITY:

5.   The pattern of racketeering activity, as defined in
Title 18, United States Code, Sections 1961(1) and 1961(5),
through which the defendants conducted and participated in the
affairs of the Enterprise, and agreed to do so, consisted of:
the importation into the United States, of marijuana, a Schedule
I controlled substance, in violation of Title 21, United States
Code, Section 952 and conspiracy to do so in violation of Title
21, United States Code, Section 963: the possession with intent

to distribute marijuana and the distribution of marijuana, a
Schedule I controlled substance, in violation of Title 21, United
States Code, Section 841(a)(1) and conspiracy to do so, in
violation of Title 21, United States Code, Section 846; the
possession with intent to distribute cocaine and the distribution
of cocaine, a Schedule II narcotic controlled substance, in
violation of Title 21, United States Code, Section 841(a)(1) and
the conspiracy to do so, in violation of Title 21, United States
Code, Section 846; travel in interstate commerce to facilitate a
cocaine business, in violation of Title 18, United States Code,
Section 1952(a)(3); murder, in violation of Florida Statute
Section 782.04; accessory after the fact to murder, in violation
of Florida Statutes Sections 777.03 and 775.082; and obstruction
of justice, in violation of Title 18, United States Code,
Sections 1503 and 1512(b).

ACTS OF RACKETEERING

6.   The defendants agreed to conduct and participate,
directly and indirectly, in the conduct of the affairs of the
Enterprise through a pattern of racketeering activity in that two
or more of the following racketeering acts would be committed on
behalf of the Enterprise.

A.   ACTS OF RACKETEERING INVOLVING MURDER

(A-1) Racketeering Act No. 1

On or about July 15, 1980, in Dade County, in the Southern
District of Florida, the defendants, MIGUEL RAMIREZ and EDUARDO
FERNANDEZ-CARDULI did unlawfully and feloniously, from a premed-
itated design to effect the death of a human being, kill and

murder Larry Nash a human being by shooting the said Larry Nash with a firearm, to wit: a semi-automatic pistol, in violation of Florida Statute 782.04.

(A-2) Racketeering Act No. 2

On or about July 15, 1980, defendants MARIO S. TABRAUE, JOSE PEPE ACOSTA, ANTONIO MUNIO, CARLOS PAZOS-SANTANA and others known and unknown to the grand jury, did knowingly and feloniously assist defendants EDUARDO FERNANDEZ-CARDULI and MIGUEL RAMIREZ, knowing that they had committed a felony, to wit: murder, with the intent that they shall avoid or escape detection, arrest, trial or punishment, by assisting them in the mutilation, cremation and disposal of Larry Nash's body and by cleaning and disposing of the automobile, in which Larry Nash was murdered, in violation of Florida Statutes, Sections 777.03 and 775.082.

(A-3) Racketeering Act No. 3

On or about February 6, 1981, in Dade County, in the Southern District of Florida, defendants MARIO S. TABRAUE, JOSE PEPE ACOSTA and ANTONIO MUNIO, did unlawfully and feloniously, from a premeditated design to effect the death of a human being, kill and murder Maria Tabraue a human being by shooting the said Maria Tabraue with a firearm, to wit: a .380 Barretta pistol, in violation of Florida Statute 782.04.

B.   ACTS OF RACKETEERING INVOLVING
     THE INITIAL DISTRIBUTION OF
     MARIJUANA TO OSCAR OLIVA CANTU

(B-1) Racketeering Act No. 4

Between the Summer of 1976 and the end of 1976, at Dade County, in the Southern District of Florida, defendants MARIO S.

TABRAUE, GUILLERMO TABRAUE, SR. and FRANCISCO QUINTANA, a/k/a "PUPI", together with others known and unknown to the grand jury, knowingly and intentionally did combine, conspire, confederate and agree with each other to distribute approximately eight thousand (8,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846.

(B-2) Racketeering Act No. 5

From in or about December, 1976, through January, 1977, at Dade County, in the Southern District of Florida, the defendant MARIO S. TABRAUE, and others known and unknown to the grand jury, knowingly and intentionally did combine, conspire, confederate and agree to distribute approximately seven thousand (7,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846.

C.   ACTS OF RACKETEERING INVOLVING
     THE BARGE CANAL AT CRYSTAL RIVER

(C-1) Racketeering Act No. 6

Between in or about November, 1977 and the beginning of 1978, at Crystal River, Citrus County, and in the Southern District of Florida and elsewhere, the defendant MARIO S. TABRAUE, together with others known and unknown to the grand jury, committed one or more of the following acts, any one of which would constitute one act of racketeering:

(a)   knowingly and intentionally imported into the United States at Crystal River, Florida, approximately twenty thousand (20,000) pounds of marijuana, a Schedule I controlled substance,

-13-

in violation of Title 21, United States Code, Section 952 and Title 18, United States Code, Section 2; and

(b)  knowingly and intentionally possessed with intent to distribute approximately twenty thousand (20,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2; and

(c)  knowingly and intentionally distributed approximately five thousand (5,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

D.  ACTS OF RACKETEERING INVOLVING
    THE NAPLES RIP-OFF

(D-1) Racketeering Act No. 7

From in or about the end of 1977, until in or about January, 1978, at Naples and Miami, in the Southern District of Florida and elsewhere, the defendant MARIO S. TABRAUE, together with others known and unknown to the grand jury, committed either one or both of the following acts, either one of which would constitute one act of racketeering:

(a)  knowingly and intentionally did combine, conspire, confederate and agree with each other to import into the United States, at Naples, Florida, from a place outside thereof, approximately fifteen thousand (15,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 963; and

(b)  knowingly and intentionally did combine, conspire, confederate and agree with each other to possess with intent to

-14-

distribute approximately fifteen thousand (15,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846.

(D-2) Racketeering Act No. 8

In or about the early part of 1978, but subsequent to the acts above, at Dade County, in the Southern District of Florida and elsewhere, the defendants MARIO S. TABRAUE and GUILLERMO TABRAUE, SR., together with others known and unknown to the grand jury, knowingly and intentionally did combine, conspire, confederate and agree with each other to distribute a quantity of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

E.   ACTS OF RACKETEERING INVOLVING
     THE TALLAHASSEE LOADS

(E-1) Racketeering Act No. 9

From in or about May, 1978, through in or about June, 1978, at Tallahassee and Dade County in the Southern District of Florida, and elsewhere, defendants MARIO S. TABRAUE, GUILLERMO TABRAUE, SR. and others known and unknown to the grand jury, knowingly and intentionally did combine, conspire, confederate and agree with each other to distribute approximately twenty thousand (20,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846.

(E-2) Racketeering Act No. 10

From in or about June, 1978, through in or about July, 1978, at Tallahassee and Dade County in the Southern District of

-15-

Florida, and elsewhere, defendants MARIO S. TABRAUE, GUILLERMO TABRAUE, SR. and others known and unknown to the grand jury, knowingly and intentionally did combine, conspire, confederate and agree with each other to distribute approximately seventeen thousand (17,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846.

F.    ACTS OF RACKETEERING INVOLVING
      POLICE LIEUTENANT CASAMAYOR

(F-1) Racketeering Act No. 11

From in or about January, 1978, until in or about April, 1978, in Monroe and Dade Counties, in the Southern District of Florida, and elsewhere, the defendant MARIO S. TABRAUE, together with others known and unknown to the grand jury, committed one or more of the following acts, any one of which would constitute one act of racketeering:

(a) knowingly and intentionally did combine, conspire, confederate and agree with each other to import into the United States, from a place outside thereof, approximately thirty thousand (30,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 963; and

(b) knowingly and intentionally did import into the United States, from a place outside thereof, approximately thirty thousand (30,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 952 and Title 18, United States Code, Section 2; and

-16-

(c) knowingly and intentionally did combine, conspire, confederate and agree with each other to possess with the intent to distribute approximately thirty thousand (30,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2; and

(d) knowingly and intentionally did possess with intent to distribute approximately ten thousand (10,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

G.   ACTS OF RACKETEERING INVOLVING
     THE LOXAHATCHEE LOADS

(G-1) Racketeering Act No. 12

In or about the Summer of 1977, at Dade County, in the Southern District of Florida, and elsewhere, the defendants MARIO S. TABRAUE and GUILLERMO TABRAUE, SR., together with others known and unknown to the grand jury, committed one or more of the following acts, any one of which would constitute one act of racketeering:

(a) knowingly and intentionally combined, conspired, confederated and agreed to possess with intent to distribute approximately twenty-five thousand (25,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846; and

(b) knowingly and intentionally possessed with intent to distribute approximately twenty-five thousand (25,000) pounds of marijuana, a Schedule I controlled substance, in violation of

-17-

Title 21, United States Code, Section 841(a)(1); and Title 18, United States Code, Section 2; and

(c) knowingly and intentionally distributed approximately twenty-five thousand (25,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

(G-2) Racketeering Act No. 13

Between in or about the Fall of 1977, and the beginning of 1978, at Loxahatchee, Florida, in the Southern District of Florida and elsewhere, the defendants MARIO S. TABRAUE and GUILLERMO TABRAUE, SR., together with others known and unknown to the grand jury, committed one or more of the following acts, any one of which would constitute one act of racketeering:

(a) knowingly and intentionally imported into the United States, at Georgia, from a place outside thereof, approximately forty thousand (40,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 952 and Title 18, United States Code, Section 2; and

(b) knowingly and intentionally combined, conspired, confederated and agreed with each other to distribute approximately forty thousand (40,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846; and

(c) knowingly and intentionally distributed approximately forty thousand (40,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States

-18-

Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

(G-3) Racketeering Act No. 14

In or about the end of 1978, at Dade County and Loxahatchee, in the Southern District of Florida, and elsewhere, the defendant MARIO S. TABRAUE, together with others known and unknown to the grand jury, committed either one or both of the following acts, either one of which would constitute one act of racketeering:

(a) knowingly and intentionally combined, conspired, confederated and agreed to distribute approximately twenty-nine thousand (29,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846; and

(b) knowingly and intentionally distributed and caused to be distributed approximately twenty-nine thousand (29,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

H.    ACTS OF RACKETEERING INVOLVING
      THE PALMETTO/APPOLLO BEACH LOAD

(H-1) Racketeering Act No. 15

In or about July, 1978, at Hillsborough County, Florida and in the Southern District of Florida, and elsewhere, the defendant, FRANCISCO QUINTANA, a/k/a "PUPI", and JOSE LABRADA, a/k/a JOE VULCANO, together with others known and unknown to the grand jury, knowingly and intentionally did import into the United States from a place outside thereof approximately fifty thousand (50,000) pounds of marijuana, a Schedule I controlled substance,

in violation of Title 21, United States Code, Section 952 and Title 18, United States Code, Section 2.

(H-2) Racketeering Act No. 16

In or about July 1978, at Hillsborough County and in the Southern District of Florida, and elsewhere, the defendant MARIO S. TABRAUE and others known and unknown to the grand jury, knowingly and intentionally combined, conspired, confederated and agreed with each other to possess with intent to distribute a quantity of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

I.  ACTS OF RACKETEERING INVOLVING
THE SMALL HOUSES LOAD

(I-1) Racketeering Act No. 17

Between in or about the end of 1978 and the beginning of 1979, at Monroe County, in the Southern District of Florida, and elsewhere, the defendants FRANCISCO QUINTANA, a/k/a "PUPI" and JOSE LABRADA, a/k/a JOE VULCANO, together with others known and unknown to the grand jury, knowingly and intentionally did import into the United States, from a place outside thereof, approximately twenty-five thousand (25,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 952 and Title 18, United States Code, Section 2.

(I-2) Racketeering Act No. 18

Between in or about the end of 1978, and the beginning of 1979, at Monroe County, in the Southern District of Florida, and

elsewhere, the defendant MARIO S. TABRAUE, together with and others known and unknown to the grand jury, knowingly and intentionally did combine, conspire, confederate and agree with each other to possess with intent to distribute approximately twenty-five thousand (25,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846.

### (I-3) Racketeering Act No. 19

In or about the end of 1978 and the beginning of 1979, but subsequent to the above acts, at Dade County in the Southern District of Florida, and elsewhere, the defendant, MARIO S. TABRAUE, together with others known and unknown to the grand jury, knowingly and intentionally distributed approximately five thousand (5,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

### J.   ACTS OF RACKETEERING INVOLVING THE ACAPULCO HOUSE LOADS

### (J-1) Racketeering Act No. 20

In or about the Spring of 1979, at Monroe County, in the Southern District of Florida, or elsewhere, the defendants MARIO S. TABRAUE, FRANCISCO QUINTANA, a/k/a "PUPI" and JOSE LABRADA, a/k/a JOE VULCANO, along with others known and unknown to the grand jury, committed one or more of the following acts, any one of which would constitute one act of racketeering:

(a)   knowingly and intentionally combined, conspired, confederated and agreed with each other to import into the United

-21-

States, at Monroe County, Florida, from a place outside thereof, approximately fifty thousand (50,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 963; and

(b) knowingly and intentionally did import into the United States from a place outside thereof approximately fifty thousand (50,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 952 and Title 18, United States Code, Section 2; and

(c) knowingly and intentionally did combine, conspire, confederate and agree with each other to possess with intent to distribute a quantity of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846; and

(d) knowingly and intentionally did possess with intent to distribute a quantity of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

(J-2) Racketeering Act No. 21

In or about the Summer of 1979, at Monroe County, in the Southern District of Florida, and elsewhere, the defendants MARIO S. TABRAUE, FRANCISCO QUINTANA, a/k/a "PUPI" and JOSE LABRADA, a/k/a JOE VULCANO, together with others known and unknown to the grand jury, committed one or more of the following acts, any one of which would constitute one act of racketeering:

(a) knowingly and intentionally combined, conspired, confederated and agreed with each other to import into the United

States, at Monroe County, Florida, from a place outside thereof, at least fifty thousand (50,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 963; and

(b) knowingly and intentionally imported into the United States, at Monroe County, Florida, from a place outside thereof, at least fifty thousand (50,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 952 and Title 18, United States Code, Section 2; and

(c) knowingly and intentionally combined, conspired, confederated and agreed to possess with intent to distribute a quantity of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846; and

(d) knowingly and intentionally possessed with intent to distribute a quantity of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

(J-3) Racketeering Act No. 22

From in or about November, 1979, until in or about December 1979, at Monroe County, in the Southern District of Florida, and elsewhere, the defendants MARIO S. TABRAUE, FRANCISCO QUINTANA, a/k/a "PUPI" and JOSE LABRADA, a/k/a JOE VULCANO, together with others known and unknown to the grand jury, committed one or more of the following acts, any one of which would constitute one act of racketeering:

(a) knowingly and intentionally combined, conspired, confederated and agreed with each other to import into the United States, at Monroe County, Florida, from a place outside thereof, approximately fifty thousand (50,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 963; and

(b) knowingly and intentionally imported into the United States from a place outside thereof approximately fifty thousand (50,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 952 and Title 18, United States Code, Section 2; and

(c) knowingly and intentionally combined, conspired, confederated and agreed with each other to possess with intent to distribute a quantity of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846; and

(d) knowingly and intentionally possessed with intent to distribute a quantity of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

K.   ACTS OF RACKETEERING INVOLVING
THE ROUND HOUSE

(K-1) Racketeering Act No. 23

In or about the fall of 1979, at Southern Dade County, in the Southern District of Florida, and elsewhere, the defendants, MARIO S. TABRAUE, JOSE PEPE ACOSTA, ANTONIO MUNIO and others known and unknown to the grand jury, committed one or more of the

following acts, any one of which would constitute one act of racketeering:

(a) knowingly and intentionally combined, conspired, confederated and agreed with each other to import into the United States, from a place outside thereof, a quantity of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 963; and

(b) knowingly and intentionally combined, conspired, confederated and agreed with each other to possess with intent to distribute fourteen thousand (14,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846; and

(c) knowingly and intentionally distributed approximately fourteen thousand (14,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

(K-2) Racketeering Act No. 24

In or about November, 1979, at Southern Dade County, in the Southern District of Florida, and elsewhere, the defendant, MARIO S. TABRAUE, JOSE PEPE ACOSTA, ANTONIO MUNIO and others known and unknown to the grand jury, committed one or more of the following acts, any one of which would constitute one act of racketeering:

(a) knowingly and intentionally combined, conspired, confederated and agreed with each other to import into the United States, from a place outside thereof, approximately thirty-eight

thousand (38,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 963; and

(b) knowingly and intentionally combined, conspired, confederated and agreed with each other to possess with intent to distribute thirty-eight thousand (38,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846; and

(c) knowingly and intentionally distributed approximately thirty-eight thousand (38,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

(K-3) Racketeering Act No. 25

In or about December, 1979, at Southern Dade County, in the Southern District of Florida, and elsewhere, the defendant, MARIO S. TABRAUE, JOSE PEPE ACOSTA, ANTONIO MUNIO and others known and unknown to the grand jury, committed one or more of the following acts, any one of which would constitute one act of racketeering:

(a) knowingly and intentionally combined, conspired, confederated and agreed with each other to import into the United States, from a place outside thereof, a quantity of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 963; and

(b) knowingly and intentionally combined, conspired, confederated and agreed with each other to possess with intent to distribute twenty thousand (20,000) pounds of marijuana, a

-26-

Schedule I controlled substance, in violation of Title 21, United States Code, Section 846; and

(c) knowingly and intentionally distributed approximately twenty thousand (20,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## (K-4) Racketeering Act No. 26

In or about the Fall of 1979, at Dade County, in the Southern District of Florida, the defendants, MIGUEL RAMIREZ and CARLOS PAZOS-SANTANA, together with others known and unknown to the grand jury knowingly and intentionally possessed with intent to distribute a quantity of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## (K-5) Racketeering Act No. 27

In or about the early part of 1980, at Dade County, in the Southern District of Florida, the defendants, MIGUEL RAMIREZ and CARLOS PAZOS-SANTANA, together with others known and unknown to the grand jury, knowingly and intentionally possessed with intent to distribute a quantity of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## (K-6) Racketeering Act No. 28

In or about Spring, 1980 at Dade County, in the Southern District of Florida, the defendant, CARLOS PAZOS-SANTANA and

other individuals known and unknown to the grand jury, knowingly and intentionally combined, conspired, confederated and agreed with each other to possess with intent to distribute quantities of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846.

(K-7) Racketeering Act No. 29

In or about February, 1981, at Dade County, in the Southern District of Florida, the defendant, CARLOS PAZOS-SANTANA, together with others known and unknown to the grand jury, knowingly and intentionally possessed with intent to distribute a quantity of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

L.   ACTS OF RACKETEERING INVOLVING
     THE LOUISIANA LOADS

(L-1) Racketeering Act No. 30

From in or about February of 1980, through March of 1980, the exact date being unknown, at Lafayette, Louisiana, and Dade County, in the Southern District of Florida, and elsewhere, the defendant, MARIO S. TABRAUE and JOSE LABRADA, a/k/a JOE VULCANO, and others known and unknown to the grand jury, knowingly and intentionally combined, conspired, confederated and agreed with each other to possess with intent to distribute a quantity of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846.

(L-2) Racketeering Act No. 31

From in or about April 1980 through May, 1980, at Lafayette,

Louisiana, Dade County in the Southern District of Florida, and elsewhere, the defendant, MARIO S. TABRAUE, JOSE LABRADA, a/k/a JOE VULCANO, MIGUEL RAMIREZ and others known and unknown to the grand jury, knowingly and intentionally combined, conspired, confederated and agreed with each other to possess with intent to distribute a quantity of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846.

### M.   ACTS OF RACKETEERING INVOLVING MIDDLE TORCH KEY SEIZURES

**(M-1) Racketeering Act No. 32**

In or about September 1980, at Monroe County, in the Southern District of Florida, and elsewhere, the defendant, FRANCISCO QUINTANA, a/k/a "PUPI", together with others known and unknown to the grand jury, knowingly and intentionally imported into the United States, from a place outside thereof, a quantity of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 952 and Title 18, United States Code, Section 2.

**(M-2) Racketeering Act No. 33**

In or about September 1980, at Monroe and Dade Counties, in the Southern District of Florida, and elsewhere, the defendant, MARIO S. TABRAUE and JOSE LABRADA, a/k/a JOE VULCANO, together with others known and unknown to the grand jury, knowingly and intentionally possessed with intent to distribute a quantity of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

N.    ACT OF RACKETEERING INVOLVING
      NEW YORK

(N-1) Racketeering Act No. 34

In or about November, 1980, at New York and Dade County, in the Southern District of Florida, the defendants, MARIO S. TABRAUE and CARLOS PAZOS-SANTANA, and others known and unknown to the grand jury, knowingly and intentionally combined, conspired, confederated and agreed with each other to distribute quantities of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846.

O.    ACTS OF RACKETEERING INVOLVING
      THE VESSELS "DOS HERMANOS" and "LOVE"

(O-1) Racketeering Act No. 35

In or about July, 1981, at Monroe County and Dade County, in the Southern District of Florida, and elsewhere, defendant, MARIO S. TABRAUE, and others known and unknown to the grand jury, knowingly and intentionally combined, conspired, confederated and agreed with each other to possess with intent to distribute approximately thirty thousand (30,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846.

(O-2) Racketeering Act No. 36

In or about September 1981, at Monroe County, in the Southern District of Florida, and elsewhere, the defendant, MARIO S. TABRAUE, and others known and unknown to the grand jury, knowingly and intentionally combined, conspired, confederated and agreed with each other to possess with intent to distribute approximately fifteen thousand (15,000) pounds of marijuana, a

Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

### P. ACTS OF RACKETEERING INVOLVING THE VESSEL "WINDJAMMER"

#### (P-1) Racketeering Act No. 37

Between in or about July, 1981 and November 1981, at Monroe County in the Southern District of Florida, and elsewhere, the defendant, FRANCISCO QUINTANA, a/k/a "PUPI", together with others known and unknown to the grand jury, knowingly and intentionally did import into the United States, in the Florida Keys, from a place outside thereof, approximately fourteen thousand (14,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 952 and Title 18, United States Code, Section 2.

#### (P-2) Racketeering Act No. 38

In or about November, 1981, at Monroe County, in the Southern District of Florida, and elsewhere, the defendant, MARIO S. TABRAUE, together with others known and unknown to the grand jury, knowingly and intentionally combined, conspired, confederated and agreed with each other to possess with intent to distribute approximately fourteen thousand (14,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846.

Q.   ACTS OF RACKETEERING INVOLVING
      THE VESSEL "C & R"

### (Q-1) Racketeering Act No. 39

In or about February and March, 1982, at Monroe County, in the Southern District of Florida, and elsewhere, the defendant, FRANCISCO QUINTANA, a/k/a "PUPI", together with others known and unknown to the grand jury, knowingly and intentionally did import into the United States, from a place outside thereof, approximately twenty-two thousand (22,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 952 and Title 18, United States Code, Section 2.

### (Q-2) Racketeering Act No. 40

In or about February and March, 1982, at Monroe County, in the Southern District of Florida, and elsewhere, the defendant, MARIO S. TABRAUE, and others known and unknown to the grand jury, knowingly and intentionally possessed with intent to distribute approximately twenty-two thousand (22,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

R.   ACT OF RACKETEERING INVOLVING
      THE VESSEL "BLUE WATER"

### (R-1) Racketeering Act No. 41

From in or about June, 1982 through in or about February, 1983, at Dade County, in the Southern District of Florida, and elsewhere, the defendants, FRANCISCO QUINTANA, a/k/a "PUPI" and MARIO S. TABRAUE, and others known and unknown to the grand jury,

combined, conspired, confederated and agreed with each other to import into the United States, from a place outside thereof, approximately twenty-five thousand (25,000) pounds of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 963.

### S.  ACTS OF RACKETEERING INVOLVING THE VESSEL "YENYA", A/K/A "GINGER"

(S-1) Racketeering Act No. 42

In or about March, 1983, at Monroe County, Florida, the defendants, MARIO S. TABRAUE and FRANCISCO QUINTANA, a/k/a "PUPI", together with others known and unknown to the grand jury, committed one or more of the following acts, any one of which constitutes one act of racketeering:

(a)  knowingly and intentionally combined, conspired, confederated and agreed to import into the United States, from a place outside thereof, a quantity of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 963; and

(b)  knowingly and intentionally imported into the United States, from a place outside thereof, a quantity of marijuana, a Schedule I controlled substance, as alleged in Count VI of this indictment, which is incorporated herein by reference as if set out in full; and

(c)  knowingly and intentionally combined, conspired, confederated and agreed to possess with intent to distribute marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846; and

(d)   knowingly and intentionally possessed with intent to distribute marijuana, as alleged in Count VII of this indictment, which is incorporated herein by reference as if set out in full.

T.   ACTS OF RACKETEERING INVOLVING
THE DISTRIBUTION OF COCAINE

**(T-1) Racketeering Act No. 43**

In or about the beginning of 1977, at Miami, in the Southern District of Florida, and elsewhere, the defendant, MARIO S. TABRAUE, and others known and unknown to the grand jury, knowingly and intentionally possessed with intent to distribute approximately three (3) kilograms of cocaine, a Schedule II controlled narcotic substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

**(T-2) Racketeering Act No. 44**

In or about March, 1977, in Miami, Dade County, in the Southern District of Florida, the defendant, MARIO S. TABRAUE, and others known and unknown to the grand jury, knowingly and intentionally distributed approximately twenty (20) kilograms of cocaine, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

**(T-3) Racketeering Act No. 45**

In or about May or June, 1977, in Miami, Dade County, in the Southern District of Florida, the defendant, MARIO S. TABRAUE, and others known and unknown to the grand jury, knowingly and intentionally distributed approximately ten (10) kilograms of cocaine, a Schedule II narcotic controlled substance, in

-34-

violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

(T-4) Racketeering Act No. 46

In or about the Spring of 1980, at Dade County, in the Southern District of Florida, the defendant, MARIO S. TABRAUE, and others known and unknown to the grand jury, knowingly and intentionally did possess with intent to distribute approximately eleven (11) kilograms of cocaine, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

(T-5) Racketeering Act No. 47

In or about the Spring of 1980, but subsequent to Act No. 46 above, at Dade County, in the Southern District of Florida, and elsewhere, the defendants, MARIO S. TABRAUE, CARLOS PAZOS-SANTANA and others known and unknown to the grand jury, knowingly and intentionally did possess with intent to distribute six (6) kilograms of cocaine, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

(T-6) Racketeering Act No. 48

Between in or about August and November, 1982, at Dade County, in the Southern District of Florida, and elsewhere, the defendant MARIO S. TABRAUE and others known and unknown to the grand jury, knowingly and intentionally did distribute not less than seven (7) kilograms of cocaine, a Schedule II narcotic controlled substance, in violation of Title 21, United States

Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

(T-7) Racketeering Act No. 49

From in or about June, 1983, until in or about July, 1983, at Dade County, in the Southern District of Florida, and elsewhere, the defendant, MARIO S. TABRAUE, and others known and unknown to the grand jury, knowingly and intentionally combined, conspired, confederated and agreed with each other to distribute approximately twenty (20) kilograms of cocaine, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Section 846.

(T-8) Racketeering Act No. 50

In or about the Summer of 1983, at Dade County, in the Southern District of Florida, and elsewhere, the defendant, MARIO S. TABRAUE, and others known and unknown to the grand jury, knowingly and intentionally did distribute a quantity of cocaine, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

(T-10) Racketeering Act No. 51

On or about February 20, 1986, defendants MARIO S. TABRAUE and ORLANDO CICILIA, distributed cocaine, as alleged in Count VIII of this indictment, which is incorporated herein by reference as if set out in full.

(T-11) Racketeering Act No. 52

On or about March 10, 1986, Defendants MARIO S. TABRAUE and ORLANDO CICILIA, distributed cocaine, as alleged in Count IX of

this indictment, which is incorporated herein by reference as if set out in full.

(T-12) Racketeering Act No. 53

On or about May 7, 1986, defendants MARIO S. TABRAUE and ORLANDO CICILIA, distributed cocaine, as alleged in Count X of this indictment, which is incorporated herein by reference as if set out in full.

(T-13) Racketeering Act No. 54

On or about September 26, 1986, at Dade County, in the Southern District of Florida and elsewhere, defendant ORLANDO CICILIA knowingly and intentionally committed one or both of the following acts, either one of which would constitute one act of racketeering:

(a) distribute cocaine as alleged in Count XI of this indictment which is incorporated herein by reference as if set out in full; and

(b) travel act violation as alleged in Count XIX of this indictment which is incorporated herein by reference as if set out in full.

(T-14) Racketeering Act No. 55

On or about October 24, 1986, the defendants, MARIO S. TABRAUE, ORLANDO CICILIA and PHILIP EPSTEIN, distributed cocaine, as alleged in Count XII of this indictment, which is incorporated herein by reference as if set out in full.

(T-15) Racketeering Act No. 56

On or about November 19, 1986, the defendants, MARIO S. TABRAUE and ORLANDO CICILIA, distributed cocaine as alleged in Count XIII of this indictment, which is incorporated herein by reference as if set out in full.

U.   ACTS OF RACKETEERING INVOLVING
     TRAVEL IN VIOLATION OF TITLE 18
     UNITED STATES CODE, SECTION 1952(a)(3)

(U-1) Racketeering Act No. 57

The travel act violation by defendant ORLANDO CICILIA in May, 1986, involving travel to Indianapolis, Indiana as alleged in Count XIV of this indictment, which is incorporated herein by reference as if set out in full.

(U-2) Racketeering Act No. 58

The travel act violation by defendant ORLANDO CICILIA on January 22, 1986, involving travel to Boston, Massachusetts as alleged in Count XV of this indictment, which is incorporated herein by reference as if set out in full.

(U-3) Racketeering Act No. 59

The travel act violation by defendant ORLANDO CICILIA on June 5, 1986, involving travel to Honolulu, Hawaii as alleged in Count XVI of this indictment, which is incorporated herein by reference as if set out in full.

(U-4) Racketeering Act No. 60

The travel act violation by defendant ORLANDO CICILIA on July 24, 1986, involving travel to Honolulu, Hawaii as alleged in Count XVII of this indictment, which is incorporated herein by reference as if set out in full.

(U-5) Racketeering Act No. 61

The travel act violation by defendant ORLANDO CICILIA on September 18, 1986, involving travel to Honolulu, Hawaii as alleged in Count XVIII of this indictment, which is incorporated herein by reference as if set out in full.

-38-

V.   ACT OF RACKETEERING INVOLVING CONSPIRACY
IN VIOLATION OF TITLE 21, UNITED STATES
CODE, SECTIONS 841(a)(1) and 963

(V-1) Racketeering Act No. 62

Conspiracy to violate Title 21, United States Code,
Sections 841(a)(1) and 963, as alleged in Count V of this indict-
ment, which is incorporated herein by reference as if set out in
full.

W.   ACT OF RACKETEERING INVOLVING
OBSTRUCTION OF JUSTICE

(W-1) Racketeering Act No. 63

On or about November 20, 1986, at Miami, in the Southern
District of Florida, the defendant, MARIO S. TABRAUE, committed
either one or both of the following acts of racketeering, either
one of which would constitute one act of racketeering:

(a)   the obstruction of justice, on or about November 20,
1986, as alleged in Count XX of this indictment, which is incor-
porated herein by reference as if set out in full; and,

(b)   witness tampering, on or about November 20, 1986, as
alleged in Count XXI of this indictment which is incorporated by
reference as if set out in full.

OVERT ACTS

In furtherance of the aforesaid conspiracy, and to effect
the objects thereof, in the Southern District of Florida, and
elsewhere, one or more of the defendants committed and caused to
be committed one or more of the following overt acts:

1.   In or about 1976, at Dade County, Florida, defendant,
GUILLERMO TABRAUE, SR., introduced Jose Luis Acosta to Colombian
sources of marijuana.

2.   In or about 1976, at Dade County, Florida, defendant, GUILLERMO TABRAUE, SR., introduced Oscar Oliva Cantu to Jose Luis Acosta and defendant FRANCISCO QUINTANA, a/k/a "PUPI".

3.   In or about the Summer of 1976, at Dade County, Florida, defendants, MARIO S. TABRAUE and GUILLERMO TABRAUE, SR., received $800,000 in cash from Oscar Oliva Cantu, at the Tabraue jewelry store on Flagler Street, in Miami, Florida, in connection with the sale of eight thousand (8,000) pounds of marijuana.

4.   From in or about December 1976, through January 1977, in Dade County, Florida, defendants, MARIO S. TABRAUE and GUILLERMO TABRAUE, SR., received at least $500,000 in cash from Oscar Oliva Cantu, at the Tabraue Jewelry store, in connection with the sale of seven thousand (7,000) pounds of marijuana.

5.   In or about the Fall of 1976, defendant, GUILLERMO TABRAUE, SR., introduced Carlos Enrique Botero to defendant MARIO S. TABRAUE.

6.   In or about the beginning of 1977, defendant, MARIO S. TABRAUE, received three (3) kilograms of cocaine from Carlos Enrique Botero at the parking lot of Tabraue's jewelry store in Miami, Florida.

7.   In or about March, 1977, defendant, MARIO S. TABRAUE, received twenty (20) kilograms of cocaine from Carlos Enrique Botero at the parking lot of Tabraue's jewelry store in Miami, Florida.

8.   In or about March or April, 1977, defendant, MARIO S. TABRAUE, sold twenty (20) kilograms of cocaine to Oscar Oliva Cantu.

9.   In or about April, 1977, subsequent to Overt Act No. 8, defendants, MARIO S. TABRAUE and GUILLERMO TABRAUE, SR., received $600,000 in cash from Oscar Oliva Cantu, at the Tabraue jewelry store in connection with the sale of twenty (20) kilograms of cocaine.

10.   In or about April, 1977, defendant, MARIO S. TABRAUE, introduced Carlos Enrique Botero to Oscar Oliva Cantu and received a fee from each of them for the introduction.

11.   In or about May, 1977, defendant, MARIO S. TABRAUE, arranged for the sale of ten (10) kilograms of cocaine from Carlos Enrique Botero to Oscar Oliva Cantu.

12.   In or about the Summer of 1977, defendant, MARIO S. TABRAUE, received approximately twenty-five thousand (25,000) pounds of marijuana from Jesus Carnet at a farm in Dade County, Florida.

13.   In or about the Summer of 1977, defendant, MARIO S. TABRAUE, delivered approximately twenty-five thousand (25,000) pounds of marijuana to Jose Antonio Fernandez and Gerardo "Tino" Guevara at a farm in Dade County, Florida.

14.   In or about the summer of 1977, subsequent to Overt Act No. 13, defendant, MARIO S. TABRAUE, received a payment of approximately $1,000,000 in cash from Jose Antonio Fernandez and Gerardo "Tino" Guevara in connection with the sale and distribution of twenty-five thousand (25,000) pounds of marijuana.

15.   In or about the Summer of 1977, subsequent to Overt Act No. 14, Jose Antonio Fernandez paid defendants, MARIO S. TABRAUE and GUILLERMO TABRAUE, SR., approximately $3,500,000 in cash in

several installments in connection with the sale and distribution of twenty-five thousand (25,000) pounds of marijuana.

16.   In or about the Summer of 1977, subsequent to Overt Act No. 15, defendant, GUILLERMO TABRAUE, SR., met with Jose Antonio Fernandez at Fernandez' home.

17.   Between the Fall and end of 1977, defendant, MARIO S. TABRAUE, arranged for delivery of approximately forty thousand (40,000) pounds of marijuana from Jesus Carnet to Jose Antonio Fernandez, Gerardo "Tino" Guevara and Robert Govern at a farm in Loxahatchee, Florida.

18.   Between the Fall and end of 1977, subsequent to Overt Act No. 17, Jose Antonio Fernandez and Gerardo "Tino" Guevara paid to defendants, MARIO S. TABRAUE and GUILLERMO TABRAUE, SR., approximately $7,000,000 in cash in several installments.

19.   Between the Fall and end of 1977, subsequent to Overt Act No. 17, defendant, GUILLERMO TABRAUE, SR., received $450,000 in currency from Jose Antonio Fernandez at Fernandez' home in Dade County, Florida.

20.   Between the Fall of 1977 and the end of 1977, defendants, MARIO S. TABRAUE and GUILLERMO TABRAUE, SR., employed a then City of Miami police officer, to assist them in collecting and counting the money received in connection with the distribution of marijuana.

21.   In 1977, defendant GUILLERMO TABRAUE, SR. introduced Gustavo Fernandez, a boat captain, to Jose Luis Acosta.

22.   Between November, 1977 and December, 1977, defendant, MARIO S. TABRAUE, made arrangements with Jose Luis Acosta for the

-42-

off-loading and transfer of at least twenty thousand (20,000) pounds of marijuana from a "mother ship" located in the Gulf of Mexico to a location in or about Crystal River, Florida.

23.   In or about December, 1977, subsequent to Overt Act No. 22, defendant, MARIO S. TABRAUE, sold five thousand (5,000) pounds of marijuana to Oscar Oliva Cantu at the parking lot of the Tabraue jewelry store in Miami, Florida.

24.   Between December, 1977 and January, 1978, Oscar Oliva Cantu paid defendants, MARIO S. TABRAUE and GUILLERMO TABRAUE, SR., $500,000 cash at Tabraue's jewelry store, in Miami, Florida, in connection with the sale of five thousand (5,000) pounds of marijuana.

25.   In or about December, 1977, Carlos Enrique Botero travelled to Baranquilla, Colombia on behalf of defendant MARIO S. TABRAUE for the purpose of purchasing and importing into the United States, at least fifteen thousand (15,000) pounds of marijuana.

26.   In or about January, 1978, Oscar Oliva Cantu delivered four vans to defendant, MARIO S. TABRAUE, in connection with the distribution of ten thousand (10,000) pounds of marijuana.

27.   In or about January, 1978, subsequent to Overt Act No. 26, defendant, MARIO S. TABRAUE, imported approximately fifteen thousand (15,000) pounds of marijuana into the United States.

28.   In or about January or February, 1978, subsequent to Overt Act No. 27, Oscar Oliva Cantu met with defendant, GUILLERMO TABRAUE, SR., to discuss the fifteen thousand (15,000) pounds of marijuana imported by defendant MARIO S. TABRAUE.

29.  In or about January, 1978, defendant, MARIO S. TABRAUE, delivered to Oscar Oliva Cantu approximately one thousand eight hundred (1,800) pounds of marijuana.

30.  In or about January, 1978, defendants, MARIO S. TABRAUE and GUILLERMO TABRAUE, SR., instructed Oscar Oliva Cantu to pay Carlos Enrique Botero approximately $100,000 cash in connection with the distribution of one thousand eight hundred (1,800) pounds of marijuana.

31.  Sometime between January, 1978 and April, 1978, defendant, MARIO S. TABRAUE, paid Gustavo Fernandez approximately $150,000 in cash for the purpose of bribing police officers in Monroe County, Florida and obtaining their protection during the off-loading of approximately thirty thousand (30,000) pounds of marijuana.

32.  Sometime between January, 1978 and April, 1978, Gustavo Fernandez paid approximately $170,000 to various police officers in Monroe County, Florida, including police lieutenant, Raymond Casamayor.

33.  In or about April, 1978, defendant, MARIO S. TABRAUE, received approximately ten thousand (10,000) pounds of marijuana from Gustavo Fernandez.

34.  Between in or about May, 1978 and July, 1978, defendant, MARIO S. TABRAUE, arranged for the sale of approximately twenty thousand (20,000) pounds of marijuana from Jose Luis Acosta to Oscar Oliva Cantu.

35.  In or about July, 1978, defendant, MARIO S. TABRAUE, arranged for the sale of approximately seventeen thousand

-44-

(17,000) pounds of marijuana from Jose Luis Acosta to Oscar Oliva Cantu.

36.   Between May, 1978 and October, 1978, Oscar Oliva Cantu paid defendants, MARIO S. TABRAUE and GUILLERMO TABRAUE, SR., approximately $6,000,000 in cash in connection with the purchase of thirty-seven thousand (37,000) pounds of marijuana from Jose Luis Acosta.

37.   In or about July, 1978, defendants FRANCISCO QUINTANA, a/k/a "PUPI" and JOSE LABRADA, a/k/a JOE VULCANO, off-loaded approximately fifty thousand (50,000) pounds of marijuana at Appollo Beach, Florida.

38.   In or about July, 1978, subsequent to Overt Act No. 37, defendant, MARIO S. TABRAUE, received a quantity of marijuana from defendant, FRANCISCO QUINTANA, a/k/a "PUPI".

39.   In or about the end of 1978, Defendant, MARIO S. TABRAUE, arranged for the sale and delivery of at least twenty-nine thousand (29,000) pounds of marijuana to Jose Antonio Fernandez, Gerardo "Tino" Guevara and Robert Govern at a farm in Loxahatchee, Florida.

40.   In or about the end of 1978, subsequent to Overt Act No. 39, defendants, MARIO S. TABRAUE and GUILLERMO TABRAUE, SR., received approximately $5,000,000 in cash from Jose Antonio Fernandez and Gerardo "Tino" Guevara.

41.   In or about the end of 1978, defendant, MARIO S. TABRAUE, paid James Ricky Brown approximately $10,000 for assisting him in the counting, sorting and distribution of cash

collected by defendant, MARIO S. TABRAUE, in connection with the sale of marijuana.

42. Between the end of 1978 and the beginning of 1979, defendant, FRANCISCO QUINTANA, a/k/a "PUPI", imported into the United States, at Islamorada, Florida, at least twenty-five thousand (25,000) pounds of marijuana.

43. Between the end of 1978 and the beginning of 1979, subsequent to Overt Act No. 42, defendant, MARIO S. TABRAUE, arranged for the delivery of approximately five thousand (5,000) pounds of marijuana, in Dade County, Florida.

44. Between the end of 1978 and the beginning of 1979, subsequent to Overt Act No. 43, James Ricky Brown, under the direction and supervision of defendant, MARIO S. TABRAUE, collected the money due from the sale of five thousand (5,000) pounds of marijuana and delivered that money to defendant, FRANCISCO QUINTANA, a/k/a "PUPI".

45. In or about the Spring of 1979, defendant, FRANCISCO QUINTANA, a/k/a "PUPI", arranged for the use of a large house in Islamorada, Florida, as a stash house for the purpose of importing marijuana into the United States (hereinafter referred to as the Acapulco house).

46. In or about the Spring of 1979, defendants, FRANCISCO QUINTANA, a/k/a "PUPI" and JOSE LABRADA, a/k/a JOE VULCANO, off-loaded approximately fifty thousand (50,000) pounds of marijuana at the Acapulco house in Islamorada, Florida.

47. In or about the Spring of 1979, defendant, MARIO S. TABRAUE, received approximately twenty-five thousand (25,000)

pounds of marijuana from defendant, FRANCISCO QUINTANA, a/k/a "PUPI", at the Acapulco house in Islamorada, Florida.

48.   In or about the Spring of 1979, defendant, MARIO S. TABRAUE, received approximately 2.2 million dollars in connection with the distribution of approximately twenty-two thousand (22,000) pounds of marijuana.

49.   In or about the Summer of 1979, defendants, FRANCISCO QUINTANA, a/k/a "PUPI" and JOSE LABRADA, a/k/a JOE VULCANO, off-loaded at least fifty thousand (50,000) pounds of marijuana at the Acapulco house in Islamorada, Florida.

50.   JOSE LABRADA, a/k/a JOE VULCANO, paid $100,000 to to Eduardo Macias.

51.   In or about the Summer of 1979, defendant, MARIO S. TABRAUE, arranged for drivers in campers and mobile homes to pick-up approximately twenty-five thousand (25,000) pounds of marijuana from defendant FRANCISCO QUINTANA, a/k/a "PUPI" at the Acapulco house in Islamorada, Florida.

52.   Between in or about November and December, 1979, defendants, FRANCISCO QUINTANA, a/k/a "PUPI" and JOSE LABRADA, a/k/a JOE VULCANO, off-loaded approximately fifty thousand (50,000) pounds of marijuana at the Acapulco house in Islamorada, Florida.

53.   Between in or about November and December, 1979, defendant, MARIO S. TABRAUE, arranged for drivers in campers and mobile homes to pick-up approximately twenty-five thousand (25,000) pounds of marijuana from defendant FRANCISCO QUINTANA, a/k/a "PUPI", at the Acapulco house in Islamorada, Florida.

54.   Between the Spring of 1979 and December, 1979, defendant, MARIO S. TABRAUE, paid approximately $2 per pound to stash marijuana at a small farm located in South Dade, Florida.

55.   In or about the Spring of 1979, defendant, MARIO S. TABRAUE, leased a farm, known as the "Round Houses", located in Southern Dade County, for the purpose of storing marijuana.

56.   Between the Fall of 1979 and the Spring of 1981, Defendants ANTONIO MUNIO, JOSE PEPE ACOSTA and LUIS VALDESUSO, a/k/a "FLACO" and RECITO" loaded and unloaded quantities of marijuana at the "Round Houses".

57.   In or about the Fall of 1979, defendants MARIO S. TABRAUE, JOSE PEPE ACOSTA and ANTONIO MUNIO, took possession of approximately fourteen thousand (14,000) pounds of marijuana at the "Round Houses".

58.   In or about the Fall of 1979, subsequent to Overt Act No. 56, defendant, MARIO S. TABRAUE, sold approximately fourteen thousand (14,000) pounds of marijuana, for approximately $235 per pound.

59.   In or about November, 1979, defendants MARIO S. TABRAUE, JOSE PEPE ACOSTA and ANTONIO MUNIO took possession of approximately thirty-eight thousand (38,000) pounds of marijuana at the "Round Houses".

60.   In or about November, 1979, subsequent to Overt Act No. 59, defendant, MARIO S. TABRAUE, sold approximately thirty- eight thousand (38,000) pounds of marijuana for approximately $235 per pound.

61.   In or about November, 1979, defendants CARLOS PAZOS-SANTANA and MIGUEL RAMIREZ received approximately ten thousand (10,000) pounds of marijuana from defendant MARIO S. TABRAUE at the "Round Houses".

62.   In or about December, 1979, defendants MARIO S. TABRAUE, ANTONIO MUNIO and JOSE PEPE ACOSTA took possession of approximately twenty thousand (20,000) pounds of marijuana at the "Round Houses".

63.   In or about December, 1979, defendant, MARIO S. TABRAUE, sold approximately twenty thousand (20,000) pounds of marijuana, for approximately $235 per pound.

64.   Between the Fall of 1979 and December, 1979, defendant, MARIO S. TABRAUE, received approximately $14,000,000 in cash in connection with the sale of approximately sixty thousand (60,0000) pounds of marijuana.

65.   During 1979, defendants, FRANCISCO QUINTANA, a/k/a "PUPI" and MARIO S. TABRAUE, paid Eduardo Macias in excess of $200,000 to obtain and operate various boats used for the off-loading of marijuana into the United States.

66.   From the Fall of 1979, until at least the end of 1979, defendant, MARIO S. TABRAUE, had City of Miami police officers assist him in collecting, counting and disbursing large amounts of currency received in connection with the distribution of marijuana.

67.   In or about December, 1979 or January, 1980, defendants MIGUEL RAMIREZ, EDUARDO FERNANDEZ-CARDULI and MARIO S. TABRAUE met at the "Round Houses."

68.   Between in or about late 1979 and the Winter of 1980, defendants MARIO S. TABRAUE, JOSE PEPE ACOSTA, ANTONIO MUNIO and others travelled from Miami to New York with firearms.

69.   Between February, 1980 and April, 1980, defendant, MARIO S. TABRAUE, James Ricky Brown, Juan Medina and others travelled by charter jet from Fort Lauderdale, Florida to Lafayette, Louisiana.

70.   Between February, 1980 and April, 1980, defendant JOSE LABRADA, a/k/a JOE VULCANO travelled to Louisiana for the purpose of distributing marijuana.

71.   Between February, 1980 and April, 1980, subsequent to Overt Act No. 69, defendant, MARIO S. TABRAUE, arranged for the sale of approximately three thousand (3,000) pounds of marijuana, located in Louisiana.

72.   In or about February or March, 1980, defendant CARLOS PAZOS-SANTANA and MIGUEL RAMIREZ received five thousand (5,000) pounds of marijuana from defendant MARIO S. TABRAUE at the "Round Houses."

73.   In or about the Spring of 1980, defendant, MARIO S. TABRAUE, received approximately eleven (11) kilograms of cocaine, as payment for approximately three thousand (3,000) pounds of marijuana.

74.   In or about the Spring of 1980, subsequent to Overt Act No. 73, defendant CARLOS PAZOS-SANTANA possessed approximately six (6) kilograms of cocaine.

75.   In or about May, 1980, defendant, MARIO S. TABRAUE, arranged for the sale of marijuana located in Louisiana.

-50-

76.   In or about May, 1980, at the direction of defendant, MARIO S. TABRAUE, James Ricky Brown, and others travelled by charter jet from Fort Lauderdale, Florida to Lafayette, Louisiana.

77.   In or about May, 1980, defendants MIGUEL RAMIREZ and JOSE LABRADA, a/k/a JOE VULCANO, travelled to Louisiana for the purpose of distributing marijuana.

78.   On or about May 16, 1980, defendant MIGUEL RAMIREZ travelled from Louisiana to Mississippi with trucks containing sixteen thousand (16,000) pounds of marijuana.

79.   On or about May 16, 1980, defendant JOSE LABRADA, a/k/a JOE VULCANO, travelled from Louisiana to Alabama in a motor home containing two large scales, five handguns and one machine gun.

80.   On or about May 23, 1980, defendant, MARIO S. TABRAUE and others arranged to pay, in cash, $400,000 in fines for the release of defendant MIGUEL RAMIREZ and other individuals after their arrests in Mississippi.

81.   From in or about the beginning of 1980, through in or about the middle of 1980, defendant EDUARDO FERNANDEZ-CARDULI supplied defendant MARIO S. TABRAUE and James Ricky Brown with firearms including two automatic pistols.

82.   On or about June 12, 1980, defendant EDUARDO FERNANDEZ-CARDULI meet with Larry Nash, a confidential informant, for the purpose of discussing the sale of machine guns.

83.   On or about July 11, 1980, defendant EDUARDO FERNANDEZ-CARDULI met with Larry Nash at EDUARDO FERNANDEZ-CARDULI's home.

-51-

84.   On or about July 15, 1980, defendants MIGUEL RAMIREZ and EDUARDO FERNANDEZ-CARDULI met with Larry Nash at EDUARDO FERNANDEZ-CARDULI's home in Miami, Florida.

85.   On or about July 15, 1980, in Dade County, Florida, Larry Nash was murdered by defendants EDUARDO FERNANDEZ-CARDULI and MIGUEL RAMIREZ with two shots from a .380 Barretta semi-automatic gun registered to defendant EDUARDO FERNANDEZ-CARDULI, in an automobile being driven by and belonging to defendant MIGUEL RAMIREZ.

86.   In or about July, 1980, subsequent to Overt Act No. 85, defendants MARIO S. TABRAUE, CARLOS PAZOS-SANTANA, ANTONIO MUNIO and JOSE PEPE ACOSTA, assisted in the mutilation, cremation and disposal of Larry Nash's body.

87.   In July, 1980, subsequent to Overt Act No. 85, the vehicle in which Larry Nash was shot and killed was brought to the residence of a individual known to the grand jury, for the purpose of removing blood from the interior of the car.

88.   In July, 1980, subsequent to Overt Act No. 87, the automobile in which Larry Nash was shot and killed was moved to the residence of James Ricky Brown at which time efforts to clean the car continued.

89.   At the direction of defendant MARIO S. TABRAUE, the vehicle in which Larry Nash was shot and killed, was ultimately sold.

90.   In or about September, 1980, defendant FRANCISCO QUINTANA, a/k/a "PUPI" imported into the United States, at Middle

Torch Key or Big Pine Key, approximately twenty-five thousand (25,000) pounds of marijuana.

91.   In or about September, 1980, defendants MARIO S. TABRAUE and JOSE LABRADA, a/k/a JOE VULCANO, arranged for drivers in vans to pick-up marijuana from defendant FRANCISCO QUINTANA, a/k/a "PUPI" and deliver it to the "Round Houses".

92.   In or about September, 1980, but subsequent to Overt Act No. 91, defendants FRANCISCO QUINTANA, a/k/a "PUPI", MARIO S. TABRAUE, and Juan Medina, met at the "Round Houses" for the purpose of inspecting the marijuana received by defendant MARIO S. TABRAUE.

93.   In or about September, 1980, defendant MARIO S. TABRAUE purchased shares in Damara, Inc., N.V., an offshore corporation.

94.   In or about November, 1980, defendants CARLOS PAZOS-SANTANA and MARIO S. TABRAUE met in New York City.

95.   In or about November, 1980, Defendants CARLOS PAZOS-SANTANA and MARIO S. TABRAUE distributed a quantity of marijuana in New York City.

96.   In or about January, 1981 or the beginning of February, 1981, the defendant MARIO S. TABRAUE travelled from Miami, Florida to Scottsdale, Arizona.

97.   In or about January, 1981, or the beginning of February, 1981, defendant ANTONIO MUNIO leased a house for defendant MARIO S. TABRAUE (known as the "Playboy Mansion"), located at 7025 S.W. 80th Street, Miami, Florida.

98.   On or about February 6, 1981, defendants ANTONIO MUNIO and JOSE PEPE ACOSTA met with Maria Tabraue at her apartment in Coral Gables, Florida.

99.   On or about February 6, 1981, defendants ANTONIO MUNIO and JOSE PEPE ACOSTA shot and killed Maria Tabraue at her apartment.

100.   On or about April, 28, 1981, defendant MARIO S. TABRAUE arranged for $650,000 in United States currency to be deposited in an offshore bank in Aruba, to the account of Damara, Inc., N.V., an offshore corporation.

101.   In or about July, 1981, Jose Luis Acosta and others imported approximately thirty thousand (30,000) pounds of marijuana into the United States, at Key Largo, Florida, using the vessels "Happy Time" and "Dos Hermanos".

102.   In or about July, 1981, defendant MARIO S. TABRAUE received from Jose Luis Acosta approximately twenty thousand (20,000) pounds of marijuana.

103.   In or about September, 1981, Jose Luis Acosta and others, imported into the United States approximately fifteen thousand (15,000) pounds of marijuana, using the vessel "Love".

104.   Between July, 1981 and November, 1981, defendant FRANCISCO QUINTANA, a/k/a "PUPI", Juan Medina and Eduardo Macias arranged for the importation of fourteen thousand (14,000) pounds of marijuana into the United States, off Sugar Loaf Key, Florida, using the vessels "Windjammer", "Venessa" and "Little John".

105.   In or about November, 1981, defendants MARIO S. TABRAUE and FRANCISCO QUINTANA, a/k/a "PUPI" met at FRANCISCO QUINTANA's

house, during which arrangements for the payment of fourteen thousand (14,000) pounds of marijuana by defendant MARIO S. TABRAUE were discussed.

106. In or about February or March, 1982, defendant FRANCISCO QUINTANA, a/k/a "PUPI", Eduardo Macias and Juan Medina imported into the United States at Sugar Loaf Key, Florida, approximately twenty-two thousand (22,000) pounds of marijuana using the vessel "C & R".

107. In or about June, 1982, the defendant, FRANCISCO QUINTANA, a/k/a "PUPI", had Eduardo Macias and the vessel "Blue Water" travel to Barranquilla, Colombia to obtain twenty-five thousand (25,000) pounds of marijuana for importation into the United States.

108. Between August and November, 1982, defendant MARIO S. TABRAUE distributed between seven (7) and ten (10) kilograms of cocaine to individuals known to the grand jury.

109. On or about the beginning of 1983, defendant ORLANDO CICILIA was employed by defendant MARIO S. TABRAUE, at his pet store, Pets Unlimited, Inc., located on 27th Avenue in Miami, Florida.

110. In or about March, 1983, Eduardo Macias was hired by defendant FRANCISCO QUINTANA, a/k/a "PUPI" to off-load sixteen thousand (16,000) pounds of marijuana from a Mexican shrimp boat off the coast of the Yucatan Peninsula for importation into the United States.

111.   Between in or about June, 1983 and July, 1983, the defendant MARIO S. TABRAUE received approximately twenty (20) kilograms of cocaine.

112.   Between in or about June, 1983 and July, 1983, the defendant MARIO S. TABRAUE sold approximately twenty (20) kilograms of cocaine to individuals known to the grand jury.

113.   In or about July, 1983, defendant JOSE LABRADA, a/k/a JOE VULCANO, was employed by defendant MARIO S. TABRAUE at his pet store, Pets Unlimited, Inc., located on 27th Avenue in Miami, Florida.

114.   In or about the Summer of 1983, defendant MARIO S. TABRAUE distributed quantities of cocaine to defendant LUIS VALDESUSO, a/k/a "FLACO" or "RECITO".

115.   In or about the Summer of 1983, defendant MARIO S. TABRAUE sold between two (2) and three (3) kilograms of cocaine to an individual known to the grand jury.

116.   In or about the Summer of 1983, defendant ANTONIO MUNIO and James Ricky Brown, at the direction of defendant MARIO S. TABRAUE, removed jewelry from an individual's residence, as collateral for payment of two (2) to three (3) kilograms of cocaine.

117.   In or about August or September, 1983, defendant MARIO S. TABRAUE sold Raymond Van Nostrand a kilogram of cocaine for thirty-two thousand dollars ($32,000).

118.   In the Summer of 1984, defendants JOSE LABRADA, JUAN PORTUONDO and MARIO S. TABRAUE met at defendant MARIO S. TABRAUE's pet business, Pets Unlimited, Inc., d/b/a Zoological

Imports Unlimited (hereinafter referred to as Zoological Imports), located at 3075 S.W. 39th Avenue, in Miami, Florida, for the purpose of weighing and cutting cocaine.

119. In late 1984, defendant JOSE LABRADA, a/k/a JOE VULCANO, distributed quantities of cocaine to an individual known to the grand jury at defendant MARIO S. TABRAUE's business, Zoological Imports.

120. In or about January, 1985, defendant MARIO S. TABRAUE gave Jose Martinez, an employee of his, a .45 caliber pistol.

121. In or about April or May, 1985, several grocery bags full of money were delivered to defendant MARIO S. TABRAUE at his residence at 3940 Douglas Road, Miami, Florida.

122. Between January, 1985 and July, 1985, defendant MARIO S. TABRAUE was in possession of suitcases filled with large amounts of currency at his residence at 3940 Douglas Road, Miami, Florida.

123. In or about April, 1985, defendant, MARIO S. TABRAUE, was in possession of approximately twenty (20) pounds of cocaine at his residence at 3940 Douglas Road, Miami, Florida.

124. Between January, 1985 and July, 1985, defendant MARIO S. TABRAUE used four safes located in his residence to store large amounts of cash.

125. Between January, 1985 and December, 1987, defendant MARIO S. TABRAUE was in possession of two machine guns, rifles, shotguns and other firearms at his residence located at 3940 Douglas Road, Miami, Florida.

126.   In or about March, 1985, defendant ORLANDO CICILIA met with individuals, known to the grand jury, at his residence for the purpose of discussing distribution of cocaine in the Indianapolis area.

127.   Between in or about May, 1985 and September, 1986, defendant ORLANDO CICILIA delivered quantities of cocaine to individuals known to the grand jury, for distribution in Indianapolis, on approximately ten separate occasions.

128.   In or about November, 1985, defendant ORLANDO CICILIA met with individuals, known to the grand jury, for the purpose of discussing the quality of cocaine being distributed.

129.   Between April, 1985 and the Summer of 1986, defendant ORLANDO CICILIA, received kilogram quantities of cocaine from defendant MARIO S. TABRAUE and stored it in his residence at 3825 S.W. 132nd Avenue, Miami, Florida.

130.   During the Spring and Summer of 1985, defendant ORLANDO CICILIA distributed quantities of cocaine to an individual known to the grand jury, for delivery to Cleveland, Ohio, on approximately six separate occasions.

131.   Between in or about the beginning of 1985 and January, 1986, defendant ORLANDO CICILIA delivered quantities of cocaine to individuals known to the grand jury, for distribution in Boston, Massachusetts, on approximately eight separate occasions.

132.   Between the Spring of 1985 and September, 1986, defendants ORLANDO CICILIA, MARIO S. TABRAUE, and others known to the grand jury, met at MARIO S. TABRAUE's residence located at 3940

Douglas Road in Miami, Florida, for the purpose of weighing and distributing kilograms of cocaine.

133.  In or about late 1985, defendant MARIO S. TABRAUE distributed a quantity of cocaine to defendant LUIS VALDESUSO, a/k/a "FLACO" or "RECITO".

134.  In or about late 1985, defendant PHILIP EPSTEIN returned a quantity of cocaine to defendant MARIO S. TABRAUE at Zoological Imports.

135.  Between April, 1986 and September, 1986, defendant ORLANDO CICILIA distributed quantities of cocaine to an individual known to the grand jury for delivery to Hawaii, on at least five separate occasions.

136.  Between the Summer of 1986 and the Summer of 1987, defendant ORLANDO CICILIA stored kilogram quantities of cocaine at a warehouse located in Miami, Florida.

137.  Between 1985 and August, 1986, Raymond Van Nostrand received quantities of cocaine from defendant JUAN PORTUONDO.

138.  Between February, 1985 and August, 1986, defendant MARIO S. TABRAUE employed Raymond Van Nostrand at his pet business, Zoological Imports.

139.  Between February, 1985 and August, 1986, defendants ORLANDO CICILIA and MARIO S. TABRAUE arranged for delivery of quantities of cocaine to Raymond Van Nostrand on numerous occasions at Zoological Imports.

140.  Between the Summer of 1986 and the Summer of 1987, defendant ORLANDO CICILIA arranged for delivery of kilogram quantities of cocaine to defendant JUAN PORTUONDO.

141.   On or about February 14, 1986, at Dade County, Florida, a meeting was held at the defendant MARIO S. TABRAUE'S business, Zoological Imports, in which the defendant MARIO S. TABRAUE discussed the sale of several thousand dollars worth of cocaine.

142.   On or about February 20, 1986, Orlando CICILIA delivered one (1) ounce of cocaine to Jose Martinez at Zoological Imports.

143.   On March 10, 1986, Orlando CICILIA delivered one ounce of cocaine to Jose Martinez, at Zoological Imports.

144.   On or about April 14, 1986, a meeting was held at Zoological Imports in Miami, Florida, in which defendant MARIO S. TABRAUE discussed the sale of one (1) pound of cocaine to Jose Martinez for $13,000.

145.   On or about May 7, 1986, Orlando CICILIA met with Jose Martinez at Zoological Imports, for the purpose of selling him one (1) pound of cocaine for $13,000.

146.   On or about May 13, 1986, defendant MARIO S. TABRAUE met with Jose Martinez at Zoological Imports, for the purpose of discussing the sale of one (1) kilogram of cocaine to Jose Martinez for $26,000.

147.   On or about July 22, 1986, Jose Martinez met with Orlando CICILIA at Zoological Imports, for the purpose of discussing a cocaine deal, and received a sample of cocaine from ORLANDO CICILIA.

148.   On or about October 24, 1986, the defendant MARIO S. TABRAUE met with Jose Martinez at Zoological Imports, and

discussed the sale of one (1) pound of cocaine to Jose Martinez for $13,000.

149.   On or about October 24, 1986, defendant PHILIP EPSTEIN delivered one (1) pound of cocaine to defendant ORLANDO CICILIA.

150.   On or about October 24, 1986, Jose Martinez received one (1) pound of cocaine from Orlando CICILIA for $13,000.

151.   On or about November 19, 1986, Orlando CICILIA delivered approximately two (2) ounces of cocaine to Jose Martinez for $2,200 at Zoological Imports.

152.   On or about November 20, 1986, defendant MARIO S. TABRAUE had a meeting with James Ricky Brown for the purpose of discussing Brown's testimony before the grand jury.

<u>COUNT II</u>

<u>RACKETEERING</u>

1.   Each and every allegation contained in paragraphs 1 through 3, 5 and 6A through 6T of Count I of this indictment is incorporated in this Count by reference as if fully set forth herein.

2.   From an unknown date, believed to be in the Summer of 1976, and continuing up to and including December 16, 1987, in the Southern District of Florida, and elsewhere, the defendants,

> MARIO S. TABRAUE
> FRANCISCO QUINTANA, a/k/a "PUPI",
> JOSE LABRADA, a/k/a JOE VULCANO,
> and
> ORLANDO CICILIA,

and other persons known and unknown to the grand jury, being employed by and associated with the Enterprise, as more fully described in paragraphs 1 through 3 and 6A through 6T of Count I,

-61-

knowingly and intentionally did conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity.

## THE PATTERN OF RACKETEERING ACTIVITY

3.   The pattern of racketeering activity, as defined by Title 18, United States Code, Sections 1961(1) and 1961(5) through which the defendants conducted and participated in the affairs of the Enterprise consisted of: the importation of marijuana, a Schedule I controlled substance in violation of Title 21, United States Code, Sections 952 and 963; possession with intent to distribute and distribution of marijuana, a Schedule I controlled substance, and cocaine, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; travel in interstate commerce to facilitate a cocaine business, in violation of Title 18, United States Code, Section 1952(a)(3); murder, in violation of Florida Statute 777.04; accessory after the fact to murder, in violation of Florida Statutes Sections 777.03 and 775.082; and obstruction of justice, in violation of Title 18, United States Code, Sections 1503 and 1512(b); the acts constituting said pattern of racketeering activity being those acts described in paragraphs 6A through 6T of Count I of this Indictment, the allegations of which are incorporated in this Count by reference, as if fully set forth herein.

All in violation of Title 18, United States Code, Sections 1962(c), 1963 and 2.

<u>COUNT XIV THROUGH XIX</u>

On or about the dates listed below according to Count, in the Southern District of Florida, and elsewhere, the defendant,

ORLANDO CICILIA,

did knowingly and willfully travel and cause another to travel in interstate commerce as listed below, with intent to promote, establish and carry on and facilitate the promotion, establishment and carrying on of an unlawful activity, that is, a business enterprise involving the distribution of cocaine, in violation of Title 21, United States Code, Section 841(a)(1) and 846, and thereafter, did knowingly and willfully perform, attempt to perform and cause to be performed, acts to promote, establish and carry on and facilitate the promotion, establishment and carrying on of said unlawful activity:

| COUNT | DATE | TRAVEL |
|-------|------|--------|
| XIV | May, 1985 | Travel by Randy Chatfield from Miami, FL to Indianapolis, IN |
| XV | January 22, 1986 | Travel by Randy Chatfield from Miami, FL to Boston, MA |
| XVI | June 5, 1986 | Travel by Randy Chatfield from Miami, FL to Honolulu, HI |
| XVII | July 24, 1986 | Travel by Randy Chatfield from Miami, FL to Honolulu, HI |
| XVIII | September 18, 1986 | Travel by Randy Chatfield from Miami, FL to Honolulu, HI |
| XIX | September 26, 1986 | Travel by Randy Chatfield from Miami, FL to Indianapolis, IN |

All in violation of Title 18, United States Code, Sections 1952(a)(3) and 2.

## COUNT III

From an unknown date, believed to be in or about the Summer of 1976, and continuing up to at least December 16, 1987, in Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### MARIO S. TABRAUE,

did knowingly and intentionally engage in a continuing criminal enterprise, in that he did knowingly and intentionally violate Title 21, United States Code, Sections 841(a)(1), 846, 952(a), 960(a)(1) and 963, as alleged in Count I, which racketeering acts are realleged herein, and in Counts V through XIII of this indictment, which counts are incorporated herein by reference, which violations are part of a continuing series of violations of subchapters I and II of the Drug Abuse and Control Act of 1970 undertaken by the defendant, MARIO S. TABRAUE, in concert with at least five other persons with respect to whom the defendant, MARIO S. TABRAUE, occupied a position of organizer, supervisor and manager and from which continuing series of violations the defendant MARIO S. TABRAUE, did obtain substantial income and resources.

All in violation of Title 21, United States Code, Section 848.

## COUNT IV

From an unknown date, believed to be in or about the Summer of 1976, and continuing up to at least March, 1983, in Dade County, in the Southern District of Florida, and elsewhere, the defendant,

FRANCISCO QUINTANA, a/k/a "PUPI",

did knowingly and intentionally engage in a continuing criminal enterprise, in that he did knowingly and intentionally violate Title 21, United States Code, Sections 841(a)(1), 846, 952(a), 960(a)(1) and 963, as alleged in Count I, which racketeering acts are realleged herein, and in Counts V through VII of this indictment, which counts are incorporated herein by reference, which violations are part of a continuing series of violations of subchapters I and II of the Drug Abuse and Control Act of 1970 undertaken by the defendant, FRANCISCO QUINTANA, a/k/a "PUPI", in concert with at least five other persons with respect to whom the defendant, FRANCISCO QUINTANA, a/k/a "PUPI", occupied a position of organizer, supervisor and manager and from which continuing series of violations the defendant FRANCISCO QUINTANA, a/k/a "PUPI", did obtain substantial income and resources.

All in violation of Title 21, United States Code, Section 848.

### COUNT V

From an unknown date, believed to be in or about the Summer of 1976, and continuing up to and including December 16, 1987, Dade County, in the Southern District of Florida, and elsewhere, the defendants,

MARIO S. TABRAUE,
GUILLERMO TABRAUE, SR.,
FRANCISCO QUINTANA, a/k/a "PUPI",
JOSE LABRADA, a/k/a JOE VULCANO,
ORLANDO CICILIA,
MIGUEL RAMIREZ,
EDUARDO FERNANDEZ-CARDULI,
CARLOS PAZOS-SANTANA,
ANTONIO MUNIO,
JOSE PEPE ACOSTA,

-64-

LUIS VALDESUSO, a/k/a "FLACO", a/k/a "RECITO",
JUAN PORTUONDO,
and
PHILIP EPSTEIN,

knowingly and intentionally did combine, conspire, confederate and agree with each other, and with persons known and unknown to the grand jury, to commit offenses against the United States, that is:

(a)  to possess with intent to distribute and to distribute quantities of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); and

(b)  to possess with intent to distribute and to distribute quantities of cocaine and its salt, cocaine hydrochloride, as Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

All in violation of Title 21, United States Code, Sections 846, as amended; November 10, 1978, September 26, 1980, October 12, 1984 and October 27, 1986.

## COUNT VI

In or about March, 1983, at Dade County, in the Southern District of Florida, and elsewhere, the defendants,

FRANCISCO QUINTANA, a/k/a "PUPI",
and
MARIO S. TABRAUE,

together with persons known and unknown to the grand jury, knowingly and intentionally did import into the United States, from a place outside thereof, a quantity of marijuana, a Schedule I controlled substance.

All in violation of Title 21, United States Code, Sections 952 and 960, and Title 18, United States Code, Section 2.

## COUNT VII

In or about March, 1983, at Dade County, in the Southern District of Florida, and elsewhere, the defendants,

FRANCISCO QUINTANA, a/k/a "PUPI",
and
MARIO S. TABRAUE,

together with others known and unknown to the grand jury, knowingly and intentionally did possess with intent to distribute a quantity of marijuana, a Schedule I controlled substance.

All in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT VIII

On or about February 20, 1986, at Dade County, in the Southern District of Florida, and elsewhere, the defendants,

MARIO S. TABRAUE,
and
ORLANDO CICILIA,

knowingly and intentionally did distribute cocaine and its salt cocaine hydrochloride, a Schedule II narcotic controlled substance.

All in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT IX

On or about March 10, 1986, at Dade County, in the Southern District of Florida, and elsewhere, the defendants,

MARIO S. TABRAUE,
and
ORLANDO CICILIA,

knowingly and intentionally did distribute cocaine and its salt cocaine hydrochloride, a Schedule II narcotic controlled substance.

All in violation of Title 21, United State Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT X

On or about May 7, 1986, at Dade County, in the Southern District of Florida, and elsewhere, the defendant,

MARIO S. TABRAUE,
and
ORLANDO CICILIA,

knowingly and intentionally did distribute cocaine and its salt cocaine hydrochloride, a Schedule II narcotic controlled substance.

All in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT XI

On or about September 26, 1986, at Dade County, in the Southern District of Florida, the defendant,

ORLANDO CICILIA,

together with others known and unknown to the grand jury, did knowingly and intentionally distribute cocaine and its salt

-67-

cocaine hydrochloride, a Schedule II narcotic controlled sub-
stance.

All in violation of Title 21, United State Code, Section
841(a)(1) and Title 18, United States Code, Section 2.

### COUNT XII

On or about October 24, 1986, at Dade County, in the South-
ern District of Florida, and elsewhere, the defendants,

MARIO S. TABRAUE,
ORLANDO CICILIA,
and
PHILIP EPSTEIN,

knowingly and intentionally did distribute cocaine and its salt,
cocaine hydrochloride, a Schedule II narcotic controlled sub-
stance.

All in violation of Title 21, United States Code, Section
841(a)(1) and Title 18, United States Code, Section 2.

### COUNT XIII

On or about November 19, 1986, at Dade County, in the
Southern District of Florida, and elsewhere, the defendants,

MARIO S. TABRAUE,
and
ORLANDO CICILIA,

together with others known and unknown to the grand jury, know-
ingly and intentionally did distribute cocaine and its salt,
cocaine hydrochloride, a Schedule II narcotic controlled sub-
stance.

All in violation of Title 21, United States Code, Section
841(a)(1) and Title 18, United States Code, Section 2.

-68-

## COUNT XX

On or about November 20, 1986, in Miami, Dade County, in the Southern District of Florida, the defendant

MARIO S. TABRAUE,

willfully, knowingly and unlawfully did endeavor to influence, obstruct and impede the due administration of justice in a corrupt manner by inducing and encouraging James Ricky Brown to lie under oath regarding details about the murder of Larry Nash and MARIO S. TABRAUE'S participation therein, so that the grand jury investigation of the Enterprise, including the criminal conduct of defendant MARIO S. TABRAUE, and his complicity in the murder of Larry Nash, would be impeded.

All in violation of Title 18, United States Code, Section 1503.

## COUNT XXI

On or about November 20, 1986, in Miami, Dade County, in the Southern District of Florida, the defendant

MARIO S. TABRAUE,

knowingly used and attempted to use intimidation, threats and misleading conduct toward another person, that is, James Ricky Brown, with the intent to influence his testimony in an official proceeding, that is, a federal grand jury investigation, and to cause and induce James Ricky Brown to withhold testimony from that official proceeding.

All in violation of Title 18, United States Code, Section 1512(b).

-70-

### COUNT XXII

On or about December 16, 1987, at Miami, Dade County, in the Southern District of Florida, the defendant,

MARIO S. TABRAUE,

did knowingly possess a firearm, that is, an Uzi, 9mm, Model B, semi-automatic pistol that had been converted to fire fully automatic, serial number SA44316, which firearm was not registered to him in the National Firearms Registration and Transfer Record as required by law, that is, Chapter 53, Title 26, United States Code; in violation of Title 26, United States Code, Sections 5861(d) and 5871.

### COUNT XXIII

On or about December 16, 1987, at Miami, Dade County, in the Southern District of Florida, the defendant,

MARIO S. TABRAUE,

did knowingly possess a firearm, that is, an RPB, M-10, .45 Caliber semi-automatic pistol that had been converted to fire fully automatic, serial number SAP454404, which firearm was not registered to him in the National Firearms Registration and Transfer Record as required by law, that is, Chapter 53, Title 26, United States Code; in violation of Title 26, United States Code, Sections 5861(d) and 5871.

<u>FORFEITURE</u>

1.  The defendants,

MARIO S. TABRAUE,
GUILLERMO TABRAUE, SR.
FRANCISCO QUINTANA, a/k/a "PUPI",
JOSE LABRADA, a/k/a JOE VULCANO,
and
ORLANDO CICILIA,

participated, directly and indirectly, in the conduct of the
affairs of an enterprise through a pattern of racketeering
activity, and conspired to do so, in violation of Title 18,
United States Code, Sections 1962(c) and (d), as alleged in
Counts I and II of this Indictment, which are incorporated by
reference herein.

2.  Forfeiture pursuant to Title 18, United States Code,
Section 1963(a)(3):  the defendants,

MARIO S. TABRAUE,
GUILLERMO TABRAUE, SR.
FRANCISCO QUINTANA, a/k/a "PUPI",
JOSE LABRADA, a/k/a JOE VULCANO,
and
ORLANDO CICILIA,

acquired and maintained interests in violation of Title 18,
United States Code, Sections 1962(c) and (d), and acquired
property constituting, and derived from, proceeds which they
obtained directly and indirectly from racketeering activities
including, but not limited to, narcotic trafficking in violation
of Title 18, United States Code, Section 1962, thereby making
such property and the entire interests of the defendants, or an
amount of cash equivalent thereto, including but not limited to
the amount of $75,000,000, constituting their joint proceeds from
the sale of cocaine and marijuana, forfeitable to the United

-72-

States of America pursuant to Title 18, United States Code, Section 1963(a)(3).

3.   Forfeiture pursuant to Title 18, United States Code, Section 1963(a)(2):   the defendants,

MARIO S. TABRAUE,<br>
GUILLERMO TABRAUE, SR.<br>
FRANCISCO QUINTANA, a/k/a "PUPI",<br>
and<br>
ORLANDO CICILIA,

have interests in, security of, claims against, and property and contractual rights including, but not limited to, interests in the property described below, which afforded defendants a source of influence over the Enterprise, which the defendants estab- lished, operated, controlled, conducted and participated in the conduct of, in violation of Title 18, United States Code, Section 1962.  Said property includes, but is not limited to, the follow- ing:

A.   Pets Unlimited, Inc., a Florida corporation, d/b/a Zoological Imports Unlimited, located at 3075 S.W. 39th Avenue, in Miami, Florida.

B.   The premises and building located at 3075 S.W. 39th Avenue, Miami, Florida, further described as:

Lots 29,32,33 and 36 in Block 12 of REALTY SECU- RITIES CORPORATION PLAT OF COCONUT GROVE, accord- ing to the Plat thereof, as recorded in Plat Book 2, at Page 35 of the Public Records of Dade County, Florida, less the westerly five feet of Lots 29, 32, 33 and 36 in Block 12 of REALTY SECURITIES CORPORATION PLAT OF COCONUT GROVE, according to the Plat thereof as recorded in Plat Book 2, at Page 35 of the Public Records of Dade County, Florida.

C.   Guillermo Tabraue, Inc., a Florida corporation, d/b/a Guillermo Tabraue Jewelry, located at 932 West Flagler Street, Miami, Florida.

D.   The residence of Mario S. Tabraue, located at 3940 Douglas Road, Miami, Florida, further described as:

Beginning at point 591 feet East of a granite post located at the northwest corner of the S 1/2 of the NE 1/4 of the NE 1/4 of Section 29, Township 54 South, Range 41 East, being on the South side of lands owned by Fredrick Ross; thence run South 111 feet along lands owned by Walter DeGarmo; thence run East along lands of Orin E. Smith to the center of the public road; thence run North 111 feet along the center of the Public Road, thence run West lot he point of beginning, being in the Northeast corner of the S 1/2 of the NE 1/4 of the NE 1/4 of Section 29, Township 54 South, Range 41 East, lying and being in Dade County, Florida; less such property as may be South of that boundary line established by that agreement dated July 18, 1935, recorded in Deed Book 1647, at Page 159, of the Public Records of Dade County, Florida.

E.   The residence of Francisco Quintana, a/k/a "Pupi", located at 3720 S.W. 107th Avenue, Miami, Florida, further described as:

Lot 7, Block 1 as recorded in Plat Book 103 at Page 1 of the Public Records of Dade County, Florida.

F.   The residence of Orlando Cicilia, located at 3825 S.W. 132nd Avenue, Miami, Florida, further described as:

Lot 21, Block 13, J.E. Head's Farm, Unit A, according to Plat Book 46, at Page 13, of the Public Records of Dade County, Florida.

4.   Forfeiture pursuant to Title 21, United States Code, Sections 848 and 853:

A.   Counts III, and V through XIII of this indictment are hereby realleged and incorporated herein by reference as if set out in full.

B.   Defendant MARIO S. TABRAUE acquired property constituting and derived from proceeds obtained directly and indirectly as a result of the violations set forth in Counts III, and V through XIII of this indictment. Said property includes but is not limited to the property described in paragraphs 2 and 3 above.

C.   The property of defendant MARIO S. TABRAUE described in paragraphs 3 A, B and D above were used, or intended to be used, by said defendant in any manner and part, to commit and facilitate the violations set forth in Counts III, and V through XIII of this indictment, pursuant to Title 21, United States Code, Section 853(a)(2).

D.   Defendant MARIO S. TABRAUE has interests in, claims against and property and contractual rights in property including, but not limited to, the property described in paragraphs 3 A, B and D above, which afforded defendant a source of control over the continuing criminal enterprise alleged in Counts III of this indictment, pursuant to Title 21, United States Code, Sections 848 and 853(a)(3).

5.   Forfeiture pursuant to Title 21, United States Code, Sections 848;

A.   Counts IV through VII of this indictment are hereby realleged and incorporated herein by reference as if set out in full.

-75-

B.   Defendant   FRANCISCO   QUINTANA,   a/k/a   "PUPI" acquired property constituting and derived from proceeds obtained directly and indirectly as a result of the violations set forth in Counts IV through VII of this indictment.   Said property includes but is not limited to the property described in paragraphs 2 and 3 above.

C.   The property of defendant FRANCISCO QUINTANA, a/k/a "PUPI" described in paragraph 3 E above was used, or intended to be used, by said defendant in any manner and part, to commit and facilitate the violations set forth in Counts IV through VII of the indictment, pursuant to Title 21, United States Code, Section 848.

D.   Defendant FRANCISCO QUINTANA, a/k/a "PUPI", had interests in, claims against and property and contractual rights in property including, but not limited to, the property described in paragraph 3 E above, which afforded defendant a source of control over the continuing criminal enterprise alleged in Counts III of this indictment, pursuant to Title 21, United States Code, Section 848.

6.   Forfeiture pursuant to Title 21, United States Code, Section 853:

A.   Counts V through XIII of this indictment are hereby realleged and incorporated herein by reference as if set out in full.

B.   Defendant, ORLANDO CICILIA acquired property constituting and derived from proceeds obtained directly and indirectly as a result of the violations set forth in Counts V

through XIII of this indictment.  Said property includes but is not limited to the property described in paragraphs 2 and 3 above.

      C.  The property of defendant ORLANDO CICILIA described in paragraph 3 F above was used, or intended to be used, by said defendant in any manner and part, to commit and facilitate the violations set forth in Counts V through XIII of the indictment, pursuant to Title 21, United States Code, Section 853(a)(2).

A TRUE BILL

FOREPERSON

DEXTER W. LEHTINEN
UNITED STATES ATTORNEY

STEVEN E. CHAYKIN
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 87-928-Cr-KEHOE(S)

UNITED STATES OF AMERICA,   )
                            )
v.                          )
                            )        ESTIMATED TRIAL TIME
MARIO S. TABRAUE, GUILLERMO TABRAUE, SR.,   )
FRANCISCO QUINTANA, a/k/a "PUPI",   )
JOSE LABRADA, a/k/a JOE VULCANO,   )
ORLANDO CICILIA, MIGUEL RAMIREZ,   )
EDUARDO FERNANDEZ-CARDULI, CARLOS PAZOS-SANTANA,
ANTONIO MUNIO, JOSE PEPE ACOSTA, LUIS VALDESUSO,
a/k/a "FLACO" a/k/a "RECITO",   CERTIFICATE OF TRIAL ATTORNEY
JUAN PORTUONDO, and PHILIP EPSTEIN

        I do hereby certify:

        1.   I have carefully considered the allegations of the
indictment, the number of defendants, the number of probable
witnesses and the legal complexities of the indictment/informa-
tion.

        2.   I am aware that the information supplied on this
statement will be relied upon by the Judges of this Court in
setting their calendars and scheduling criminal trials under the
mandate of the Speedy Trial Act, Title 28, U.S.C., Section 3161

        3.   This cause will take __70__ days for the parties to
try.

        4.   (Check the appropriate category)

                _____   I     0 to 5 days

                _____   II    6 to 10 days

                _____   III   11 to 20 days

                _____   IV    21 to 60 days

                __X__   V     61 days and over

        5.   Has this case been previously filed in this Court?

If Yes, Judge __KEHOE__

Case Number: __87-928 CR__

A copy of the dispositive order must be attached hereto.

        6.   Was this matter pending in the Office of the United
States Attorney as of August 16, 1985?

                        __X__
                        Yes                    No

                        Assistant United States Attorney
                        STEVEN E. CHAYKIN

No. _____

# UNITED STATES DISTRICT COURT

___ SOUTHERN ___  District of FLORIDA ___

_____ Division _____

## THE UNITED STATES OF AMERICA

vs.

MARIO S. TABRAUE, GUILLERMO TABRAUE, SR., FRANCISCO QUINTANA, a/k/a "PEPE", JOSE LABRADA, a/k/a JOE VULCANO, ORLANDO CICILIA, MIGUEL RAMIREZ, EDUARDO FERNANDEZ-CARDULI, CARLOS PAZOS-SANTANA, ANTONIO MUNIO, JOSE PEPE ACOSTA, LUIS VALDESUSO, a/k/a "FLACO", a/k/a "RECTRO", JUAN BORDUANDO and PHILIP EPSTEIN

## INDICTMENT

18 USC §§1962(c), (d), 1963, 2, 1503, 1512(b); 1952(a)(3)
21 USC §§848, 963, 846, 841(a)(1);
26 USC §§5861(d), 5871

A true bill.

_William C. La La Jr._
_____ Foreman

_Deputy_

Filed in open court this _____ day,

of _____ A.D. 19 _____

_____ Clerk

Bail, $ _____

FORM DBD-34
JUN. 85